Fred **PEPPARD**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 17050.

United States Court of Appeals
Eighth Circuit.

March 7, 1963.

---

Fred A. Newth, Jr., Little Rock, Ark., for appellant.

Charles M. Conway, U. S. Atty., Fort Smith, Ark., for appellee.

Before JOHNSEN, Chief Judge, and MATTHES and RIDGE, Circuit Judges.

PER CURIAM.

Appellant, a practicing attorney at Hot Springs, Arkansas, was convicted, under 18 U.S.C. § 2315, of receiving, concealing, and disposing of United States Savings Bonds, in the amount of $12,500.-00, alleged to be stolen, known by appellant to be so, and moved in interstate commerce in relation to appellant's unlawful acts. He was given a sentence of eighteen months in prison. The court denied him leave to appeal in forma pauperis on the ground that the appeal was frivolous. He then paid the docketing fee in this court and thereafter made application here for leave to proceed with the appeal in forma pauperis.

His application failed to make any specification of the questions or issues which he sought to raise. We requested him to provide such an indication as a basis for acting on the application. He thereupon filed a statement of the contentions which he desired to have pre-

sented, consisting in substance of the following:

(1) The court erred in denying his motion for a bill of particulars.

(2) The court arbitrarily refused to issue a writ of habeas corpus ad testificandum to have the Department of Justice produce an inmate of the Atlanta Penitentiary, named Childs, at the trial as a witness for appellant.

(3) The court improperly ruled that, as a matter of law, "the alleged offense was one involving interstate commerce".

(4) The court's instructions contained numerous errors which "appellant desires this court to review".

(5) Hearsay testimony was admitted on the trial as to statements and conversations about matters of which appellant was not even claimed to have had knowledge at the time they occurred.

(6) The Government was permitted to introduce evidence which was irrelevant and immaterial to the question of appellant's guilt but which was "calculated to inflame and prejudice the jury against the appellant".

We appointed the attorney, who had been employed by appellant on his trial, to represent him on his application here and requested that a statement or summary of the evidence of which he complained be prepared, in collaboration with the United States Attorney, and filed. This has been done, and such statement, the files of the District Court, and a copy of the court's instructions are before us.

From the face of this material, we must hold that each of the questions sought to be presented by appellant is legally frivolous.

■ No room exists for any contention that the court abused its discretion in denying appellant's motion for a bill of particulars, since plainly what the motion sought was information as to details of the Government's proof and not of particulars going to the description of the offense.

■ Also, there is no legal basis on which to argue that the court acted arbitrarily in refusing to issue a writ of habeas corpus ad testificandum for the producing of Childs from the Atlanta Penitentiary, since the circumstances involved were, undisputedly, (a) that appellant and his counsel were notified approximately two months before the trial that the case was set for April 16, 1962; (b) that, upon the filing of a motion by appellant to have the Government disclose the prison locations of Childs and two other convicts named Aderholt and Easterling, the court, on March 19, 1962, by letter, advised appellant's counsel that writs of habeas corpus ad testificandum had been issued at the request of the United States Attorney for the production of Aderholt and Easterling, who were confined at other institutions, but not for the production of Childs, who was then at Atlanta, and, if counsel intended to file a motion to obtain the presence of Childs, within the prescriptions of Rule 17(b) of the Rules of Criminal Procedure, the court would give consideration to the motion; (c) that no further motion was filed by appellant until April 12, 1962, four days before the trial; and (d) that the motion so filed merely made allegation that Childs' testimony was "vital and important" to appellant, but did not state, as required by Rule 17(b), "the testimony which he [the witness] is expected by the defendant to give if subpoenaed" and did not show that "the defendant does not have sufficient means and is actually unable to pay the fees". (Not even here has appellant indicated what testimony he expected Childs to give.)

■ Passing to appellant's contention 3—appellant is wholly mistaken in his assertion that the court ruled that, as a matter of law, interstate commerce was involved as to the alleged offense. On the contrary, the instructions specifically left it to the jury to determine, not merely whether the bonds were stolen, and whether, if appellant received, concealed, or disposed of them, he had knowledge of this fact, but also whether, if these elements existed, the bonds were at the time, within the language of

§ 2315, "moving as, or which are a part of, or which constitute interstate * * * commerce". The jury was told that interstate commerce, as an element of the offense charged, could be found to exist only if there was a receipt, concealment or disposal of the bonds by appellant pursuant to a plan or scheme agreed upon between him and the persons who had stolen them, and if the transportation involved was done in furtherance of such plan or scheme. Appellant took no exception to these instructions, and thus accepted them as a proper statement of the law on the question of interstate transportation in relation to the offense.

On similar basis, appellant's contention 4, that there are numerous errors in the court's instructions which he desires to have us review, is frivolous. Appellant did not make request for any instructions, and he took no exception to any part of the charge which the court gave. Hence, under Rule 30, Rules of Criminal Procedure, 18 U.S.C.A., he is without status to claim error in the instructions, except as he might seek to invoke judicial grace in respect to some matter in the charge amounting to a fundamental unfairness in the administration of justice. But nothing whatsoever has been pointed out in the instructions, although a copy of the charge was duly furnished to him. Appellant has merely engaged in the ignorable abstraction that numerous errors exist.

Contentions 5 and 6 of appellant, which are related, are also, on the face of the filed statement and the court's instructions, without any arguable substance. As the statement of the evidence shows, appellant admitted on the stand that the bonds had been in his possession. His story was that some unidentified person had left an overcoat on a rack in his office; that a few days later he noticed a sealed envelope in the inside pocket of the coat and he thereupon cut open the envelope and found the bonds; that he took them upstairs to the office of a private investigator—a former captain of the Hot Springs police department—and asked the latter to do whatever was necessary to relieve him of the responsibility of the bonds; that the private investigator brought them back to appellant's office; and that appellant thereupon became frightened and threw the bonds in the lake.

The jury rejected this story and accepted the testimony of convicts Aderholt and Easterling, on behalf of the Government, that after telephone conversations with appellant, they had brought the bonds by automobile from Monroe, Louisiana, to Hot Springs, Arkansas, and delivered them to him under an agreement that he was to dispose of them, and with a discussion among them of how this was going to be done; that the bonds had been stolen by them and Childs from a filling station safe in Duncan, Mississippi; that after the theft the three of them decided that appellant (who had previously acted as attorney for them) would be able to sell the bonds; that they then split up, with Aderholt and Easterling proceeding to Monroe, Louisiana, with the bonds, and with Childs going to Greenville, Mississippi; that Easterling had telephoned appellant about the bonds from Monroe, but appellant was reluctant to discuss the matter over the phone, saying that he was not familiar with Easterling's voice; that Easterling thereupon told appellant he would have Childs call appellant "to settle the deal"; that Easterling then telephoned Childs at Greenville and twenty minutes later Childs called back, stating that appellant had said to bring the bonds to Hot Springs; and that Easterling and Aderholt thereupon took the bonds to Hot Springs and turned them over to appellant, in the manner and on the basis indicated above. Records of the Telephone Company were introduced showing calls made to appellant at the times and places testified to by Easterling and Aderholt.

Easterling and Aderholt were further permitted to testify that the theft of the bonds was engaged in while they and Childs were on a trip, which they were making, pursuant to a plan or scheme agreed upon by the three of them and

appellant at Hot Springs. Under this scheme, they were to take appellant's Hertz Rent-a-Car and Hilton Carte Blanche credit cards, go out and purchase merchandise from filling stations, sell the goods and divide the proceeds among the four of them. On this basis, they had proceeded into Louisiana and Mississippi and had picked up and disposed of 20 automobile tires before they engaged in the incident of stealing the bonds.

■ While there was no claim that appellant knew of the commission of the theft until after it occurred, the significance of what he subsequently did, as testified to by Easterling and Aderholt, entitled it to be found that there was a ratification and acceptance thereof as related to and as a fruit of the plan and associationship which underlay the trip. What appellant did, when Easterling and Aderholt reached Hot Springs, was sufficient also to show that this ratification and acceptance had occurred, so as to have made him a participant, at the time of Childs' telephone call to Easterling stating that appellant had said to bring the bonds to Hot Springs. Appellant's dealings with Easterling and Aderholt adequately confirmed that they were at the time being expected by him on this basis. Childs' statement to Easterling of what appellant had said thus constituted an expression made in the execution of the plan of the four participants and was part of the history of their venture.

■ The filed statement further makes the contention that the testimony of Easterling as to his conversations with appellant was incompetent as being hearsay. Testimony by a witness as to his conversation with a defendant is, of course, not hearsay. Other technical contentions as to matters of evidence are made which equally are without any arguable substance.

Since appellant has failed to present any questions or issues which can reasonably be said to involve arguable substance, the appeal will be dismissed.

Appeal dismissed.