**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Louis RINCHACK, Defendant-Appellant.**

No. 86–3270.

United States Court of Appeals, Eleventh Circuit.

July 14, 1987.

---

Mary Catherine Bonner, Ft. Lauderdale, Fla., for defendant-appellant.

Robert Merkle, U.S. Atty., Karla Spaulding, Michael A. Cauley, Asst. U.S. Attys., Tampa, Fla., John F. De Pue, Dept. of Justice, Crim. Div., Washington, D.C., for plaintiff-appellee.

Before JOHNSON and CLARK, Circuit Judges, and MORGAN, Senior Circuit Judge.

JOHNSON, Circuit Judge:

This is an appeal from a judgment of conviction in a drug case. Following an indictment and jury trial, appellant Louis Rinchack was convicted of conspiracy to import marijuana, importation of marijuana, conspiracy to possess with intent to distribute marijuana, and possession with intent to distribute marijuana. He argues on appeal that: 1) the trial court abused its discretion in refusing to appoint a psychiatric expert at government expense to assist him at a hearing to determine his competency to stand trial; 2) the trial court abused its discretion in refusing to procure at government expense the attendance of three witnesses for the defense; 3) his due process rights were violated because he was tried while he was suffering from amnesia; and 4) the trial court abused its discretion in refusing to grant his motion for a continuance. We reject all of the appellant's contentions and affirm his conviction.

## I. FACTS AND PROCEEDINGS BELOW

On the night of September 12, 1980, a Florida Highway Patrolman in Punta Gorda, Florida, observed a light aircraft attempting to land outside of Punta Gorda in an area frequently used by small planes involved in drug-smuggling operations. Suspicious that the airplane might be smuggling drugs into the country, the patrolman radioed a report to the county sheriff's department. Upon dispatching deputies to the airport to investigate, the sheriff's department found a Cessna Skymaster containing twenty-nine bales of marijuana. An inspection of the airplane revealed that the rear seats had been removed from the plane to make room for the marijuana.

The sheriff's department traced the Cessna to a man named Edward Gasper. A check of registrations at area motels established that Gasper had recently checked into the local Holiday Inn. While the police were at the Holiday Inn attempting to locate Gasper, they observed appellant Louis Rinchack and two of Rinchack's codefendants, Steven Backner and David Burlingame, at the front desk attempting to check into the motel. The police followed the trio as they climbed into a pickup truck with a camper shell and left the Holiday Inn. After following the truck for a short distance, the police pulled it over to the side of the road. Upon approaching the truck to question its occupants, the police spotted two partially concealed aircraft seats in the back of the truck inside the camper shell. The seats later proved to be the same type of seats as the ones removed from the Cessna Skymaster.

The police arrested Rinchack, Burlingame and Backner. A post-arrest search of Rinchack's person yielded a piece of paper bearing Gasper's room number. The police then went to Gasper's room at the Holiday Inn and arrested Gasper and the two other men in the room with him, George Moran and Paul Murphy. A search of Gasper's motel room turned up a flight plan to Kingston, Jamaica. A post-arrest search of Gasper himself produced the keys to the Cessna. Other evidence produced after a full investigation established that Rinchack had placed several phone calls to a well-known drug smuggler in Jamaica named Bryan Phillips and that the Cessna's September 12 flight had originated in Jamaica. The government also established that Gasper placed a call from the Holiday Inn to Rinchack's residence on the evening of September 12. In addition, Claude Nardy, one of Rinchack's associates, testified that Rinchack told him that he had driven to Punta Gorda to unload a plane of marijuana, but that he had been arrested when he arrived.

The State of Florida prosecuted Rinchack and six other individuals under its state

criminal laws.[1] The case was dismissed after the trial court suppressed most of the state's evidence as illegally seized. As a result of the dismissal from state court, the federal government decided to prosecute the case under federal law.

In the meantime, on September 28, 1983, three years after the evening of September 12, 1980, Rinchack was struck on the head by a steel cable while working on a vessel in the Pacific Ocean. He was rendered unconscious for a day and a half and was hospitalized for treatment and observation. Following the accident, Rinchack complained of recurring dizziness and amnesia and remained under the care of various doctors during the years following the accident.

On February 2, 1985, approximately two years after Rinchack's accident, a federal grand jury returned an indictment against Rinchack and the other six individuals alleging violations of 18 U.S.C.A. § 2 and 21 U.S.C.A. §§ 951, 963, 841(a)(1) and 846. Gasper, Moran and Murphy entered guilty pleas, Burlingame and Backner were tried in separate trials and acquitted, and a warrant is still outstanding for Phillips.

On May 9, 1985, Rinchack filed a motion pursuant to 18 U.S.C.A. § 4241(a) for a hearing to determine his competency to stand trial.[2] He claimed that he was incompetent to stand trial due to the September 1983 accident, which left him with memory loss, damage to his cerebellum and brain stem, vertigo, dizziness and seizures. The motion was supported by the affidavit of Dr. Roger Schnell, M.D. Schnell's affidavit stated that Rinchack had suffered serious permanent neurological injury from his September 1983 accident and that the injury impaired his coordination and movement.

The district court granted Rinchack's motion and issued an order pursuant to Section 4241(b) requiring Rinchack to submit to a psychiatric examination to determine his competency to stand trial.[3] With the court's approval, the parties jointly selected Dr. Albert Jaslow, Ph.D., to conduct the examination. Although the record is unclear, it appears that Rinchack agreed to waive a Section 4241(a) hearing and abide by the result of Dr. Jaslow's examination.

Dr. Jaslow filed a report on May 15, 1985. The report concluded that Rinchack was incompetent to stand trial, noting that Rinchack appeared to suffer from memory loss, confusion, blackouts and catatonic episodes as a result of the accident. The report also noted that Rinchack "display[ed] defects that would suggest organic brain involvement, and ... these would undoubtedly interfere with his clarity of thought, and would make it difficult for him to properly assist ... in his own defense when it would be necessary to recall things, [and] associate them properly with time and occurrences."

Based upon Jaslow's report, the district court committed Rinchack to the United States Medical Center for Federal Prisoners at Springfield, Illinois, for treatment and observation pursuant to 18 U.S.C.A. § 4241(d).[4] Rinchack entered the Springfield facility on August 21, 1985, and remained there for approximately three and a half months.

---

1. The other individuals are Paul Murphy, Edward Gasper, George Moran, Steven Backner, David Burlingame, and Bryan Phillips.

2. 18 U.S.C.A. § 4241 provides:
(a) *Motion to determine competency of defendant.*—At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, the defendant ... may file a motion for a hearing to determine the mental competency of the defendant ...

3. 18 U.S.C.A. § 4241(b) provides:
(b) *Psychiatric or psychological examination and report.*—Prior to the date of the hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court ...

4. 18 U.S.C.A. § 4241(d) provides:
(d) *Determination and disposition.*—If, after a hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent ... the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility ...

On November 22, 1985, a committee composed of two psychiatrists and the warden of the Springfield facility informed the district court that Rinchack was mentally competent to stand trial. The committee also forwarded a "Final Psychiatric Evaluation" to the court. The report was comprised of a cover letter from the examining committee, a report from Dr. Fred Wilson, a psychologist and neurologist who supervised the committee which examined Rinchack, and a report from Dr. Daniel Taub, a clinical psychologist. The psychiatric evaluation concluded that Rinchack's claimed memory loss was inconsistent with various aspects of his behavior and that his neurological tests showed normal functioning.

Rinchack filed a motion for release from Springfield and requested a competency hearing pursuant to 18 U.S.C.A. § 4241(e).[5] On December 4, 1985, the district court granted the request for a hearing and issued an order transferring Rinchack from Springfield to Tampa. A competency hearing was scheduled for 2:30 p.m. on December 30, 1985, before Magistrate Wilson. Thirty minutes before the competency hearing was scheduled to commence, Rinchack's attorney filed a written motion for the appointment of a psychiatrist at government expense to assist him in preparing for the competency hearing. Not surprisingly, given the last-minute filing, the district court did not rule on the motion prior to the hearing. Rinchack's attorney renewed the Section 3006A(e) motion twice during the hearing, once as the hearing commenced and once at the close of the government's evidence, specifically requesting the assistance of Dr. Jaslow both times.[6] The magistrate denied the requests and proceeded with the hearing.

The sole witness at the competency hearing was Dr. Fred Wilson, the supervisor of the medical team which examined Rinchack at Springfield. Dr. Wilson testified that Rinchack did not appear to be suffering from "a true organic type amnesia" and that he was "able to remember a good deal more than he ... claimed he could." He testified that his conclusion was based upon Rinchack's spontaneous recollections of early family life, his ability to recall detailed financial matters concerning his mortgage on his home and various engineering design concepts, and the absence of any physiological evidence of neurological problems or organic brain damage. Dr. Wilson also testified that in his opinion Rinchack had a factual understanding of the legal proceedings and was capable of assisting in his own defense. In addition to Dr. Wilson's testimony and the Springfield report, the magistrate had Dr. Jaslow's initial report, Dr. Schnell's report, and other reports and records from various physicians who had treated Rinchack after his accident before him for consideration, as well as his own observation of the defendant.

On January 6, 1986, Magistrate Wilson issued a report and recommendation finding the appellant competent to stand trial. The magistrate stated that he had considered medical reports supporting Rinchack's claim of incompetency, including Dr. Jaslow's report, but that he found the report from the Springfield Medical Facility more persuasive because it was based on observation and examination conducted over an extended period of time and contained a full explanation for its conclusion. The district court adopted the magistrate's findings and recommendations on January

---

**5.** 18 U.S.C.A. § 4241(e) provides:

(e) *Discharge.*—When the director of the facility in which defendant is hospitalized pursuant to subsection (d) determines that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, he shall promptly file a certificate to that effect with the clerk of the court that ordered the commitment ... The court shall hold a hearing

... to determine the competency of the defendant ...

**6.** Rinchack's attorney did not expressly renew the written Section 3006A(e) motion. Instead, he simply requested the presence of Dr. Jaslow at the hearing at government expense. For purposes of this discussion, we will treat the request to have the assistance of Dr. Jaslow as a renewal of the Section 3006A(e) motion, discussed above, as well as a Rule 17(b) witness subpoena request, discussed *infra*.

7, 1986, and set the case for trial January 14, 1986.

On January 8, 1986, Rinchack's attorney moved for a continuance to permit him more time to interview his client and obtain further psychiatric evaluation. The court denied the motion. Rinchack's attorney subsequently fell ill and was unable to try the case on the scheduled date, so the court continued the trial until January 27, 1986.

The trial did in fact commence on January 27. Rinchack made a motion on the morning of trial for a writ of habeas corpus *ad testificandum* to procure the presence of two of his codefendants to testify at trial. The court denied the motion as untimely. On January 30, 1986, the jury returned a verdict of guilty on all four counts in the indictment. Rinchack was sentenced to five years on each count, each to be served concurrently with one another, and a two year special parole term. On April 11, 1986, he filed this appeal.

## II. DISCUSSION

A. *Refusal to Appoint Psychiatric Expert Pursuant to 18 U.S.C.A. § 3006A(e)*

Rinchack's first argument on appeal is that the district court abused its discretion in denying his request for the appointment of a psychiatric expert at government expense to assist him in preparing for the December 30 competency hearing. Section 3006A(e) provides that:

Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for an adequate defense may request them in an ex parte proceeding. Upon finding ... that the services are necessary and that the person is financially unable to obtain them, the court ... shall authorize counsel to obtain the services.

18 U.S.C.A. § 3006A(e). It is well established that the expert services provided for in Section 3000A(e) include the assistance of a psychiatrist in cases where competency or insanity is an issue. *U.S. v. Alden,* 767 F.2d 314, 318 (7th Cir.1984); *United*

*States v. Chavis,* 476 F.2d 1137, 1141 (D.C. Cir.1973); *United States v. Taylor,* 437 F.2d 371, 377 (4th Cir.1971); *see, e.g. United States v. Fessel,* 531 F.2d 1275, 1280 (5th Cir.1976); *United States v. Theriault,* 440 F.2d 713 (5th Cir.1971), *cert. denied,* 411 U.S. 984, 93 S.Ct. 2278, 36 L.Ed.2d 960 (1973). The decision to grant or deny a motion for services pursuant to Section 3006A(e) is committed to the sound discretion of the district court and may only be overturned upon a showing of abuse of that discretion. *United States v. Goodwin,* 770 F.2d 631, 635 (7th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 858, 88 L.Ed.2d 897 (1986); *Alden, supra,* 767 F.2d at 319; *United States v. Valtierra,* 467 F.2d 125, 126 (9th Cir.1972).

The statute requires the district court to authorize Section 3006A(e) services when the defendant successfully makes a showing that 1) he is financially unable to provide the services *and* 2) the services of the psychiatric expert are "necessary for an adequate defense". 18 U.S.C.A. § 3006A(e); *Chavis, supra,* 486 F.2d 1290, 1291 (D.C.Cir.1973); *United States v. Bass,* 477 F.2d 723, 725 (9th Cir.1973); *Theriault, supra,* 440 F.2d at 717 (Wisdom, J., concurring); H.Rep. No. 1546, 91st Cong., 2d Sess., reprinted in 1970 U.S.Code Cong. & Ad.News 3982, 3991. The appellant's argument on appeal focuses only on the second of the two required showings: [7] necessity. He contends that the district court abused its discretion in denying his request for a Section 3006A(e) psychiatrist because: 1) he could not make out an effective competency claim without presenting expert testimony at the hearing rebutting the opinion of Dr. Wilson and the Springfield team; and 2) he needed to consult with a psychiatrist to effectively cross-examine Dr. Wilson.

We reject the appellant's contention on two grounds. First, Rinchack failed to make a timely request for Section 3006A(e) services and thereby waived any rights he otherwise might have had under the section. *See United States v. Patter-*

---

7. The government does not dispute Rinchack's claim of indigency.

son, 438 F.2d 328, 329 (5th Cir.1971); accord United States v. Fince, 670 F.2d 1356, 1357 (4th Cir.), cert. denied, 456 U.S. 982, 102 S.Ct. 2254, 72 L.Ed.2d 860 (1982); Marshall v. United States, 423 F.2d 1315, 1318 (10th Cir.1970). A trial court is not required to grant an eleventh hour request for Section 3006A(e) services, particularly where the delay in making the request is unjustified and would require a continuance of the hearing and/or trial. See United States v. Fountain, 768 F.2d 790, 794 (7th Cir.1985) cert. denied, 106 S.Ct. 1647, 90 L.Ed.2d 191 (1986); Valtierra, supra, 467 F.2d at 126; Bass, supra, 477 F.2d at 725. Despite the fact that the Springfield team released its report on November 22, 1985, Rinchack's attorney offered no explanation, either at trial or on appeal, as to why he was unable to file the Section 3006A(e) request until thirty minutes before the December 30 competency hearing. Furthermore, the fact that the attorney waited until the last minute to file the motion meant that the district court would have had to continue the hearing if he granted the request.

 Second, even disregarding the untimely filing of the request, we conclude that the trial court did not abuse its discretion in determining that the requested services were not "necessary for an adequate defense." A court may refuse to authorize Section 3006A(e) expert services on grounds that they are not "necessary"

when it concludes that the defendant does not have a plausible claim or defense. See Alden, supra, 767 F.2d at 318–19; United States v. Oliver, 626 F.2d 254, 259–60 (2d Cir.1980); Chavis, supra, 476 F.2d at 1143; Theriault, supra, 440 F.2d at 717 (Wisdom, J., concurring). The district court here had a more than adequate basis to determine that Rinchack's competency claim was meritless.[8]

 First and foremost, the court had the benefit of a detailed report from the Springfield medical team stating their conclusion that Rinchack was competent to stand trial. While the appointment of an expert pursuant to some other statutory section cannot be a substitute for a defense expert appointed pursuant to Section 3006A(e)[9], Theriault, supra, 440 F.2d at 715; accord Bass, supra, 477 F.2d at 725; Chavis, supra, 486 F.2d at 1292, a court may take the result of prior competency determinations into account in determining whether a Section 3006A(e) appointment is "necessary." See United States v. Lincoln, 542 F.2d 746, 749 (8th Cir.1976), cert. denied, 429 U.S. 1106, 97 S.Ct. 1138, 51 L.Ed.2d 558 (1977); Brinkley v. United States, 498 F.2d 505, 510 n. 2 (8th Cir.1974); Chavis, supra, 476 F.2d at 1143. While the court also had some evidence before it which supported Rinchack's incompetency claim, most notably Dr. Jaslow's report as well as Dr. Schnell's report, it reasonably

8. The government argues that Rinchack was not entitled to the appointment of a psychiatrist because amnesia alone cannot render a defendant incompetent to stand trial. We flatly reject this argument for two reasons. First, Rinchack's claim of incompetency does not rest exclusively on a claim of amnesia. As Dr. Jaslow's and Dr. Schnell's reports reflect, Rinchack also claims to suffer from physiological brain damage, dizziness, seizures, disorientation, and an inability to think clearly. Second, contrary to the government's contention, the controlling authority in this jurisdiction does not hold that amnesia alone cannot render a defendant incompetent to stand trial. Rather, the established rule is that amnesia alone does not automatically render a defendant incompetent. United States v. Mota, 598 F.2d 995, 998 (5th Cir.1979), cert. denied, 444 U.S. 1084, 100 S.Ct. 1042, 62 L.Ed.2d 770 (1980); United States v. Swanson, 572 F.2d 523, 526 (5th Cir.), cert. denied, 439 U.S. 849, 99 S.Ct. 152, 58 L.Ed.2d

152 (1978). To determine the competency to stand trial of a defendant suffering from amnesia, the trial court should evaluate the facts and circumstances of the defendant's impairment in light of the usual standard for determining competency. Mota, supra, 598 F.2d at 998. The question of whether the district court properly found the defendant to be competent to stand trial, assuming that he does in fact suffer from amnesia, is the subject of Rinchack's third point of appeal, discussed infra.

9. This is because an expert appointed pursuant to Section 3006A(e) serves a different function from other court-appointed experts. His primary responsibility is to assist the defense rather than the court. See Bass, supra, 477 F.2d at 723; United States v. Hamlet, 456 F.2d 1284 (5th Cir.1972), cert. denied, 414 U.S. 1026, 94 S.Ct. 452, 38 L.Ed.2d 317 (1973); Theriault, supra, 440 F.2d at 715. See also note 8 infra.

could have found the Springfield report more persuasive. *See United States v. Schappel,* 445 F.2d 716 (D.C.Cir.1971). Not only was the report developed over a three month period of time, as compared to Dr. Jaslow's single office visit, but it reflected the opinions of several psychiatrists and neurologists. In addition, there is nothing in the record to suggest that Dr. Wilson or the other physicians at Springfield were biased, incompetent or otherwise unworthy of belief.[10] *Cf. Moore v. Zant,* 722 F.2d 640, 649 (11th Cir.1983).

■ Finally, we conclude that the court did not err in finding that additional psychiatric services were not "necessary" because it could have determined that Rinchack already had sufficient expert assistance to present his competency claim. In recognizing that Section 3006A(e) entitles a defendant to a certain level of expert assistance where appropriate, the courts have also recognized that the requisite assistance does not have to be provided by a Section 3006A(e) expert. *See United States v. Greschner,* 802 F.2d 373, 376 (10th Cir.1986); *Lincoln, supra,* 542 F.2d at 749; *United States v. Fratus,* 530 F.2d 644, 650 (5th Cir.) *cert. denied,* 429 U.S. 846, 97 S.Ct. 130, 50 L.Ed.2d 118 (1976); *Chavis, supra,* 476 F.2d at 1143; *Taylor, supra,* 437 F.2d at 377 n. 8. The expert assistance guaranteed in Section 3006A(e) can come from a variety of sources, such as other court-appointed psychiatrists whose opinions are favorable to the defense, privately-retained psychiatrists, or any other qualified psychiatrist who has examined the defendant in a relevant context. *See, e.g., United States v. Lawson,* 653 F.2d 299, 304 (7th Cir.1981), *cert. denied,* 454 U.S. 1150, 102 S.Ct. 1017, 71 L.Ed.2d 305 (1982); *Chavis, supra,* 476

F.2d at 1143; *Taylor, supra,* 437 F.2d at 377 n. 8; *cf. Grescher, supra,* 802 F.2d at 376 (Section 3006A(e) expert not "necessary" if the testimony he would give can be provided by other witnesses). As the District of Columbia Circuit explained in *United States v. Chavis, supra,*

> The issue does not revolve around the technical fact of under what provision a psychiatrist is appointed, but rather the substantive issue of whether the defendant received the assistance "necessary to an adequate defense." Where the defendant has been provided with adequate expert assistance from whatever source, appointment under Section 3006A(e) is no longer "necessary."

476 F.2d at 1143.

■ A review of the record in this case reflects that Rinchack had sufficient access to psychiatric services from other sources to permit him to prepare an adequate defense. Services "necessary for an adequate defense" have been defined as services necessary for adequate preparation for cross-examination of a government expert witness as well as presentation of an expert defense witness. *United States v. Crews,* 781 F.2d 826, 834 (10th Cir.1986); *Oliver, supra,* 626 F.2d at 260. Although appellant argues that he needed a Section 3006A(e) expert to testify in support of his claim and to enable him to effectively cross-examine Dr. Wilson, the record reveals that he was able to accomplish both of these tasks to an acceptable degree without additional expert assistance. While Rinchack was not able to present a live witness to the court in support of his claim, he was able to present the written reports of Drs. Jaslow and Schnell, both strongly supporting his claim of incompetency.[11] In addition, as the transcript from

---

**10.** It is worthwhile to note that the doctors on the Springfield medical team were not responsible to the prosecution, but to the court. *Chavis, supra,* 476 F.2d at 1141. While a court-appointed psychiatrist may ultimately give testimony favorable to the defense or the prosecution, his responsibility is to serve the court in a non-partisan manner. *Chavis, supra,* 476 F.2d at 1141; *United States v. Pogany,* 465 F.2d 72, 78 (3rd Cir.1972); *In re Harmon,* 425 F.2d 916, 918 (1st Cir.1970).

**11.** We note that this case does not present a situation where the denial of a 3006A(e) request prevents a defendant from presenting any expert testimony whatsoever in support of his or her defense. While additional expert testimony might have reinforced the reports of Drs. Jaslow and Schnell, there is no reason to believe that it would have provided radically new information about Rinchack's condition.

the competency hearing reveals, Rinchack's attorney had enough familiarity with his client's medical history and the nature of his alleged impairment to be able to perform a lengthy and adequate cross-examination of the government expert. While the appellant might have preferred to present his incompetency claim with the benefit of an additional expert, we cannot say that the district court abused its discretion in denying the appellant's Section 3006A(e) request.

## B. *Refusal to Grant Witness Subpoena Requests*

Rinchack's second argument on appeal is that the district court abused its discretion in denying his request to subpoena Dr. Jaslow and two of Rinchack's co-defendants, Moran and Murphy. Moran and Murphy were both incarcerated at the time of Rinchack's trial, serving prison terms for their role in the drug smuggling scheme at issue in this case. Rinchack did not request Dr. Jaslow's presence at the competency hearing until the day of the hearing, and did not request Moran and Murphy's presence at trial until the day of trial. The district court denied the request for Jaslow's presence without explanation, and denied the request for Moran and Murphy's presence as untimely. We hold that the district court did not abuse its discretion in denying the subpoena requests.

Rinchack's request for Dr. Jaslow's presence at the competency hearing is controlled by Federal Rule of Criminal Procedure 17(b). Rule 17(b), which governs the issuance of witness subpoenas in criminal cases, directs the court to issue a subpoena at government expense for witnesses requested by the defendant "upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary for an adequate defense." Fed. R.Crim.P. 17(b); *United States v. Garmany,* 762 F.2d 929, 934 (11th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 811, 88

L.Ed.2d 785 (1986). The grant or denial of a Rule 17(b) motion is committed to the discretion of the district court and is subject to reversal on appeal only upon a showing of abuse of that discretion. *United ed States v. Hegwood,* 562 F.2d 946, 952 (5th Cir.1977), *cert. denied,* 434 U.S. 1079, 98 S.Ct. 1274, 55 L.Ed.2d 787 (1978); *accord United States v. LeAmous,* 754 F.2d 795, 798 (8th Cir.), *cert. denied,* 471 U.S. 1139, 105 S.Ct. 2684, 86 L.Ed.2d 701 (1985); *United States v. Sims,* 637 F.2d 625, 629 (9th Cir.1980).

As a threshold matter, a defendant making a Rule 17(b) request bears the burden of articulating specific facts that show the relevancy and necessity of the requested witness's testimony. *Hegwood, supra,* 562 F.2d at 952; *LeAmous, supra,* 754 F.2d at 798. In exercising its discretion, the court may consider other factors pertaining to the prospective witnesses' testimony as well, including materiality, competency and the timeliness of the request. *Hegwood, supra,* 562 F.2d at 952; *United States v. Pitts,* 569 F.2d 343, 349 n. 10 (5th Cir.), *cert. denied,* 436 U.S. 959, 98 S.Ct. 3076, 57 L.Ed.2d 1125 (1978). The appellate courts have upheld the refusal of district courts to issue a Rule 17(b) subpoena where the request was untimely, the testimony sought was cumulative, or the defendant failed to make a satisfactory showing of indigency or necessity. *Sims, supra,* 637 F.2d at 629; *see, e.g., Hegwood, supra,* 562 F.2d at 953 (timeliness and failure to show necessity); *United States v. Martin,* 567 F.2d 849, 852–53 (9th Cir.1977) (cumulative); *United States v. Stoker,* 522 F.2d 576, 579 (10th Cir.1975) (timeliness and failure to show indigency and necessity).

Rinchack argues that the district court erred in denying his motion to compel the presence of Dr. Jaslow at trial at government expense because 1) he made a satisfactory showing that Dr. Jaslow's testimony was necessary to his defense;[12] and 2) the court impermissibly denied the motion

---

**12.** As with Rinchack's Section 3006A(e) claim, the government does not dispute Rinchack's indigency.

solely on the grounds that it was untimely, without regard to any other factors. Both arguments are meritless.

■ First, although it is not clear that the district judge denied Rinchack's motion for Dr. Jaslow's presence solely on the grounds that the motion was untimely, the court certainly could have denied the motion on that basis. Contrary to Rinchack's assertion, untimely filing of a Rule 17(b) motion does provide a sufficient basis for a district court to deny the motion. *Sims, supra,* 637 F.2d at 629; *Hegwood, supra,* 562 F.2d at 953; *United States v. Jones,* 487 F.2d 676, 679 (9th Cir.1973). Since the motion for Jaslow's presence was not made until the day of the competency hearing, the trial court justifiably could deny the motion as untimely. Although Rinchack argues that the last minute filing of the motion should not be weighed heavily because the magistrate did not declare Rinchack competent until December 30, the day of the competency hearing, Rinchack's *attorney* certainly knew about Dr. Jaslow well before December 30 and could have requested his presence any time after December 4, the date the competency hearing was scheduled.

■ In addition, the district court legitimately could have denied the motion to subpoena Dr. Jaslow on the grounds that his testimony would be cumulative. *See United States v. Gallagher,* 620 F.2d 797, 800 (10th Cir.), *cert. denied,* 449 U.S. 878, 101 S.Ct. 224, 66 L.Ed.2d 100 (1980). A Rule 17(b) motion, unlike the broader 3006A(e) request, only brings a witness to court to *testify* at government expense—it is not designed to be a discovery device. Dr. Jaslow's testimony would have been limited to the matters covered in his report to the court concerning Rinchack's condition, although the court already had the benefit of the report itself. While Dr. Jas-

low's live testimony might have been preferable in some respects to the submission of his written report, Rinchack did not allege that Dr. Jaslow's live testimony would be so essential to an understanding of the report as to mandate Jaslow's presence at the hearing. The burden of showing the necessity of a requested witness's expected testimony is on the defendant, *Hegwood, supra,* 562 F.2d at 952; *LeAmous, supra,* 754 F.2d at 798, and Rinchack did not satisfy that burden in this case.

■ Rinchack's request for the presence of Moran and Murphy requires a slightly different analysis from his request for the presence of Dr. Jaslow because Moran and Murphy are incarcerated prisoners. As a technical matter, the proper method for securing a prisoner's presence at trial is a petition for a writ of habeas corpus *ad testificandum.*[13] *Pollard v. White,* 738 F.2d 1124, 1125 (11th Cir.1984), *cert. denied,* 469 U.S. 1111, 105 S.Ct. 791, 83 L.Ed.2d 785 (1985); *see Garmany, supra,* 762 F.2d at 934 & n. 4; *Ballard v. Spradley,* 557 F.2d 476, 480 (5th Cir.1977). Generally, however, courts have required defendants in criminal cases requesting petitions for writs of habeas corpus *ad testificandum* to comply with the requirements of Rule 17(b). *Garmany,* 762 F.2d at 934 n. 4; *United States v. Rigdon,* 459 F.2d 379, 380 (6th Cir.1972), *cert. denied,* 409 U.S. 1116, 93 S.Ct. 917, 34 L.Ed.2d 700 (1973); *Peppard v. United States,* 314 F.2d 623, 625 (8th Cir.1963).

■ As with a Rule 17(b) request, the grant or denial of a petition for a writ of habeas corpus *ad testificandum* is committed to the sound discretion of the district court. *Pollard, supra,* 738 F.2d at 1125; *Spears v. Chandler,* 672 F.2d 834, 835 (11th Cir.1982); *Ballard, supra,* 557 F.2d at 480. In addition to requiring the defendant to make the Rule 17(b) showings that he is unable to pay the fees of the witness

---

**13.** A writ of habeas corpus *ad testificandum* differs from a Rule 17(b) witness subpoena in that a witness subpoena orders the individual whose testimony is sought to attend the trial, while a writ of habeas corpus *ad testificandum* runs to the custodian of the potential witness. *Garmany, supra,* 762 F.2d at 934 n. 4. It is well established that 28 U.S.C.A. § 2241(c)(5) and 28

U.S.C.A. § 1651(a), when read together, empower the district court to issue a writ of habeas corpus *ad testificandum. Id.* at 934; *United States v. Jackson,* 757 F.2d 1486, 1492 (4th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 407, 88 L.Ed.2d 358 (1985); *Story v. Robinson,* 689 F.2d 1176 (3rd Cir.1982).

and that the presence of the witness is necessary for an adequate defense, Fed.R. Crim.P. 17(b); *Garmany, supra*, 762 F.2d at 934, the court should also consider whether the prisoner's presence will substantially further the resolution of the case, what security risks are presented by permitting the prisoner to come to court to testify, what the expense of the prisoner's transportation and upkeep will be, and other factors bearing on the need for the prisoner's testimony vis-a-vis the difficulties attendant to securing it. *Ballard, supra*, 557 F.2d at 480–81; *see also Pollard, supra*, 738 F.2d at 1125; *ITEL Capital Corp. v. Dennis Mining Supply & Equipment*, 651 F.2d 405, 407 (5th Cir.1981).

Rinchack argues that the district court abused its discretion in denying his oral request for the presence of Moran and Murphy because 1) the court denied the motion solely on the grounds that it was untimely, without consideration of other factors, such as Rinchack's need for the testimony, and 2) the court denied the motion without inquiring into what the testimony of Moran or Murphy was expected to be. Both contentions are meritless.

■ As for Rinchack's first argument, this Circuit's predecessor Circuit squarely held that a district court may refuse to issue a writ of habeas corpus *ad testificandum* solely on the grounds that the petition is untimely. *ITEL Capital Corp., supra*, 651 F.2d at 407–08; *see also Jackson, supra*, 757 F.2d at 1492; *Peppard, supra*, 314 F.2d at 623. This principle only applies, however, if the defendant had adequate notice of the trial date. *ITEL Capital Corp., supra*, 651 F.2d at 407–08. The trial court in this case had ample grounds to deny Rinchack's petition as untimely. Rinchack had three full weeks from the time the trial was initially set to the time the case actually went to trial to file a petition for a writ of habeas corpus *ad testificandum*, yet did not file the request until the trial actually began. *Cf. ITEL Capital Corp., supra*, 651 F.2d at 408 (no abuse of discretion where court denied petition for writ filed 3 days before trial); *Pep-*

*pard, supra*, 314 F.2d at 625 (no abuse of discretion where court denied petition for writ filed 4 days before trial). Rinchack does not contend that he did not receive notice of the trial date, nor does he offer any explanation for his delay in requesting the presence of Moran and Murphy.

■ In addition to the untimeliness of the request, the district court properly could have denied Rinchack's petition for the presence of Moran and Murphy on an additional ground: Rinchack's failure to show a need for the testimony of either witness. The transcript from the trial reflects that Rinchack's request for the presence of his two codefendants was not accompanied by any offer of proof as to the testimony they might be expected to offer. In fact, Rinchack's attorney did nothing more than tell the court that he would "like to have the court issue a writ *ad testificandum* for Mr. Murphy and Mr. Moran" without further explanation or elaboration.[14] *See Peppard, supra*, 314 F.2d at 625 (no abuse of discretion for court to deny writ where defendant made no indication of what testimony witness was expected to offer); *cf. Rigdon, supra*, 459 F.2d at 380 (no abuse of discretion for court to deny writ where defendant made insufficient proffer as to content of witness's expected testimony). Although Rinchack argues that the district court erred in not inquiring into what the two men might be expected to testify, the law is crystal clear that the burden of showing necessity and relevance is on the defendant. *See LeAmous, supra*, 754 F.2d at 798; *Hegwood, supra*, 562 F.2d at 952; *Rigdon, supra*, 459 F.2d at 380; *Peppard, supra*, 314 F.2d at 625. The law also clearly provides that failure to carry this burden is a legitimate basis to deny a request to procure the presence of a witness. *Sims, supra*, 637 F.2d at 629.

## C. *Rinchack's Competency*

Rinchack's third argument on appeal is that the trial court violated his due process rights by forcing him to go to trial while he was suffering from severe head trauma and amnesia. Rinchack's argument pro-

---

**14.** Far from explaining to the court how important the two witnesses were to his case, Rinchack's attorney acquiesced to the court's denial of the motion by stating that he was "hoping we won't need them."

ceeds on the assumption that he does in fact suffer from amnesia and, given that, he argues that the trial court erred in finding him competent to stand trial. Although the appellant has made no showing that the district court erred in adopting the Springfield team's conclusions regarding Rinchack's amnesia, we will assume for present purposes that Rinchack does in fact suffer from amnesia.

The due process clause of the Constitution prohibits the conviction of an incompetent defendant. *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *Davis v. Wyrick*, 766 F.2d 1197, 1201 (8th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1209, 89 L.Ed.2d 322 (1986). As noted earlier, however, amnesia does not render a defendant automatically incompetent to stand trial.[15] *Davis v. Wyrick, supra,* 766 F.2d at 1202; *United States v. Mota*, 598 F.2d 995, 998 (5th Cir. 1979), *cert. denied,* 444 U.S. 1084, 100 S.Ct. 1042, 62 L.Ed.2d 770 (1980); *United States v. Swanson*, 572 F.2d 523, 526 (5th Cir.), *cert. denied,* 439 U.S. 849, 99 S.Ct. 152, 58 L.Ed.2d 152 (1978). For an amnesiac (or any other impaired defendant) to stand trial, consistent with notions of due process, he must be able to satisfy the ordinary competency standard: that is, he must be able "to consult with his lawyer with a reasonable degree of rational understanding and ... [have] a rational as well as factual understanding of the proceeding against him." *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); *United States v. Rodriguez*, 799 F.2d 649, 654 (11th Cir.1986); *Mota, supra,* 598 F.2d at 998.

■ In applying this standard to an amnesiac defendant, the court should evaluate the nature and extent of the defendant's impairment and determine its impact on the following factors:

1. The defendant's ability to take the stand and testify and otherwise participate in his defense;
2. Whether the amnesia is temporary or permanent;
3. Whether the crime and the defendant's whereabouts can be properly recon-structed without the defendant's testimony, including any facts giving rise to a defense;
4. Whether access to government files would aid in preparing for trial;
5. The strength of the government's case against the defendant.

*Mota, supra,* 598 F.2d at 998; *Swanson, supra,* 572 F.2d at 526; *accord Wilson v. United States*, 391 F.2d 460, 464 (D.C.Cir. 1968).

Applying these factors to the facts of this case, Rinchack argues that his condition did in fact render him incompetent to stand trial because: 1) the evidence against him was not overwhelming, as evidenced by the fact that the two other passengers in the pickup truck who were arrested and prosecuted with him were acquitted; 2) he was not given special access to any government files on the case; and 3) he was unable to refute the government's evidence that he had made several telephone calls to Jamaica or explain why he was on the west coast of Florida the night of his arrest.

Applying the same factors, the government points out that: 1) Rinchack had access to the transcripts from the prior judicial proceedings in the case involving his codefendants, and was therefore able to reconstruct the crime from the testimony in the transcripts; 2) Rinchack's son-in-law, Burlingame, gave exculpatory testimony at trial on Rinchack's behalf as to why he was on the west coast of Florida the night of the crime; and 3) the evidence against Rinchack was overwhelming—specifically, the government introduced evidence that Rinchack had Gasper's room number in his pocket when arrested, that the truck he was driving had the airplane seats in it, that he had made several telephone calls to Jamaica, the source of the drugs in question, and that he told an associate that he was in the Punta Gorda area the night of September 12 to pick up a "load" of marijuana.

■ Appellant has failed to show that his due process rights were violated in any way. As an initial point, our review of the record indicates that the evidence against

**15.** See *supra* note 8.

Rinchack was very strong. There is no question that the Cessna was smuggling marijuana from Jamaica—the only real issue in the case was whether the evidence in the case tied the various defendants closely enough to the planeload of marijuana. Although the two other men who were riding in the truck with Rinchack were acquitted, the government had more evidence tying Rinchack to the planeload of marijuana than it did tying the two other passengers. In addition, although Rinchack apparently was not given special access to government files, he was nonetheless able to reconstruct the events of the evening from the other materials available to him, such as the transcripts from the trials of his codefendants and the testimony of Burlingame. Finally, while we can never know for sure what Rinchack might be able to remember if he did not suffer from amnesia, there does not appear to be any real possibility the amnesia is "locking in" exculpatory information. There is no prolonged period of time around the time of the crime where Rinchack was alone and his whereabouts and activities are entirely unexplained, nor is there any suggestion that Rinchack's link to the other defendants or the incriminating circumstantial evidence in this case has an innocent explanation. Consequently, we hold that Rinchack's due process rights were not violated.

### D. *Continuance*

Rinchack's final argument is that the trial court abused its discretion in denying his motion for a continuance of the trial date.[16] At the time Rinchack was declared competent to stand trial on January 6, the court set a trial date of January 14. On January 8, Rinchack's attorney moved for a continuance in order to allow more time to prepare for trial and consult with his client. The court denied the motion, but later ended up continuing the trial date until January 27 because Rinchack's attorney fell ill.

Appellant argues that the district court erred in denying the motion because it prevented his obtaining additional expert assistance from Dr. Jaslow and procuring the attendance of Murphy and Moran. As the

government points out, the appellant's justification for the continuance was undercut when the trial court denied his motions to subpoena the three witnesses and to have a Section 3006A(e) expert appointed. Once the court had denied Rinchack's request to procure the witnesses and to have an expert appointed, there really was no reason to grant the continuance. Consequently, we hold that the district court did not abuse its discretion in refusing to grant Rinchack's request.

### III. CONCLUSION

Accordingly, for the reasons stated above, we reject each of Rinchack's contentions and hold that the judgment entered by the district court is AFFIRMED.

---

16. The determination of whether to grant a motion for a continuance rests in the sound discretion of the district court. *United States v. Astling*, 733 F.2d 1446, 1452 (11th Cir.1984).