NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 10-2896 & 10-2897
_____

UNITED STATES OF AMERICA

v.

JAMES MURPHY,
a/k/a Jimmy Murphy,
a/k/a Black

James Murphy,
                            Appellant

_____

On Appeal from the United States District Court
For the Middle District of Pennsylvania
(D.C. Criminal Action Nos. 1-08-cr-00433-001 / 1-10-mc-00168-001)
District Judge:  Honorable William W. Caldwell
_____

Submitted Under Third Circuit LAR 34.1(a)
January 23, 2012
_____

Before:  AMBRO, CHAGARES and HARDIMAN, Circuit Judges

(Opinion filed: February 6, 2012)
_____

OPINION
_____

AMBRO, Circuit Judge

1

Following a two-day jury trial, Appellant James Murphy was found guilty of one count of distribution and possession with intent to distribute heroin and 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841 and 846, and one count of engaging in a conspiracy to distribute and possess with intent to distribute heroin and 50 grams or more of cocaine base, also in violation of 21 U.S.C. §§ 841 and 846. Murphy was sentenced to 360 months' imprisonment, and now appeals his conviction and sentence. We affirm.

I.

Because we write solely for the parties, we recite only those facts necessary for our decision. In July 2008, the police arrested a drug dealer who informed them that she had been selling drugs for Murphy off and on for nearly a year, selling approximately one gram of heroin per day and one ounce of crack cocaine each week. Murphy was indicted in December 2008. His trial was initially scheduled for March 2009; however, the trial was continued several times because two separate attorneys withdrew from representing Murphy and because his trial counsel later sought and obtained multiple additional continuances.

The trial ultimately began on July 13, 2009. On that day, Murphy requested that the District Court issue writs of *habeas corpus ad testificandum* for two incarcerated witnesses, Clifton Shields and Richard Byrd. At no time prior to this did Murphy indicate that he believed that these witnesses were necessary to mount his defense.

In each motion seeking a writ, Murphy used the same single-line explanation as to why the two witnesses were needed: "[The requested witness] will testify that the Defendant in this matter, James Murphy, was not involved in the sale or distribution of

2

drugs." However, during a discussion held on the record, Murphy's counsel conceded that he had conferred with counsel for Shields and Byrd, and been informed that they would invoke their Fifth Amendment rights and refuse to testify. After conferring with the United States Marshal's Service and learning that the earliest Byrd could be produced was a week later, and the earliest Shields could be produced was two weeks later, with neither guaranteed, the District Court denied Murphy's motions for writs of *habeas corpus ad testificandum*.

On the first day of trial, the Government called Jesse Hamman, a convicted drug dealer then facing additional weapon charges, as a witness. Hamman testified as to his awareness of an individual nicknamed "Black" and his conversations with Murphy, who was in jail with him at the time. During those conversations, Murphy admitted to being "Black," discussed the time "the FBI came up on him in Lewistown," and identified another individual who had previously left cocaine in Hamman's car. Murphy did not object to the admission of Hamman's testimony.

On the second day of trial, the Government called Officer Robert Haines, Jr., of the Mifflin County Regional Police Department. Officer Haines testified regarding a January 2008 encounter with Murphy and some of Murphy's associates that ultimately led to the discovery of drug distribution paraphernalia in a backpack carried by Murphy after two of his associates were arrested for having outstanding warrants and after Murphy voluntarily consented to the search of the bag. Murphy did not object to the admission of Officer Haines' testimony, nor was any suppression motion filed.

3

Following trial, the jury found Murphy guilty of both of the drug charges. As noted, the District Court sentenced him to 360 months' imprisonment.

## II.

In this appeal, Murphy raises three points of error in the District Court's handling of the trial. First, he argues that the Court abused its discretion and violated his Sixth Amendment right to have compulsory process for obtaining witnesses in his favor by denying his motions for writs of *habeas corpus ad testificandum*. Second, Murphy contends that the District Court committed plain error by admitting the testimony of Hamman, the claim being that Hamman was a "government informant[ ] who had deliberately elicited information after [Murphy] had been indicted, in violation of [Murphy's] Sixth Amendment right to counsel." Third, Murphy asserts that the District Court committed plain error by admitting Officer Haines' testimony regarding the drug distribution paraphernalia found in Murphy's backpack, the search of which Murphy complains violated his Fourth Amendment rights.

## III.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291.

Because Murphy did not object at trial, we review the District Court's decision to admit the testimony of Hamman and Officer Haines for plain error. *United States v. Ward*, 626 F.3d 179, 183 (3d Cir. 2010) ("Errors that were not raised before the District Court are subject to plain error review, meaning that, in order to prevail on appeal, a defendant must establish an error that is plain, which affected his substantial rights, and

4

which, if not rectified, would seriously affect the fairness, integrity or public reputation of judicial proceedings.").

## IV.

### A.     The Motions For Writs Of *Habeas Corpus Ad Testificandum*

The District Court did not abuse its discretion, nor did it violate Murphy's Sixth Amendment rights, by denying the motions for writs of *habeas corpus ad testificandum*.

A federal court may, in its discretion, issue such a writ to secure the appearance of a prisoner as a witness if it is necessary to bring the prisoner into court to testify or for trial. 28 U.S.C. § 2241(c)(5). A district court's decision whether to issue the writ will be reversed only for an abuse of discretion. *Jerry v. Francisco*, 632 F.2d 252, 256 (3d Cir. 1980).

The criminal defendant bears the burden of producing facts that will justify issuance of a writ of *habeas corpus ad testificandum*. *United States v. Cruz-Jiminez*, 977 F.2d 95, 103 (3d Cir. 1992).

> If the accused avers facts which, if true, would be relevant to any issue in the case, the requests for [writs] must be granted, unless the averments are inherently incredible on their face, or unless the Government shows, either by introducing evidence or from matters already of record, that the averments are untrue or that the request is otherwise frivolous.

*Id.* (quoting *United States v. Smith*, 924 F.2d 889, 896 (9th Cir. 1991)).

"[I]t is also appropriate to place the burden of proving the necessity of a witness's testimony on the defendant seeking the writ." *Id.* "A defendant's failure to carry this

burden 'is a legitimate basis to deny a request to procure the presence of a witness.'" *Id.* (quoting *United States v. Rinchack*, 820 F.2d 1557, 1568 (11th Cir. 1987)).

Here, the District Court had multiple legitimate bases upon which to deny Murphy's motions. As an initial matter, the motions were untimely, as Murphy waited until the first day of trial—indeed, he waited until after the trial had begun—before requesting the writs. *Rinchack*, 820 F.2d at 1568 ("[A] district court may refuse to issue a writ of habeas corpus *ad testificandum* solely on the grounds that the petition is untimely. . . . The trial court in this case had ample grounds to deny Rinchack's petition as untimely[ ] [because he] . . . did not file the request until the trial actually began."); *ITEL Capital Corp. v. Dennis Mining Supp. & Equip., Inc.*, 651 F.2d 405, 407-08 (5th Cir. 1981) (holding that district court did not abuse discretion by denying petition for writ filed three days before trial); *Peppard v. United States*, 314 F.2d 623, 625 (8th Cir. 1963) (holding same for petition filed four days before trial). The District Court properly could have denied the motions on this basis alone.

Murphy also failed to satisfy his burden of proving the relevancy and necessity of Shields' and Byrd's putative testimony. As a practical matter, Murphy's delay in filing the motions significantly undermines his argument that the proposed witnesses would have provided relevant and necessary testimony. If Shields' and Byrd's putative testimony truly were relevant and necessary to his defense, we presume Murphy would have moved for the writs much earlier than the first day of trial. Further, Murphy's motions provided exactly one sentence of explanation for why he wished to have Shields and Byrd produced, and it was the same sentence for both: to repeat, "[The requested

6

witness] will testify that the Defendant in this matter, James Murphy, was not involved in the sale or distribution of drugs." Such a conclusory allegation unsupported by any factual proffer does not satisfy Murphy's burden of proof. *See Smith*, 924 F.2d at 896 ("unsupported and conclusory claims are not sufficient"); *Rinchack*, 820 F.2d at 1568 (upholding denial of writ where defendant failed to provide an offer of proof); *Peppard*, 314 F.2d at 625 (holding that district court did not abuse discretion by denying writ where defendant made no indication of what testimony the witness was expected to offer); *United States v. Rigdon*, 459 F.2d 379, 380 (6th Cir. 1972) (no abuse of discretion for court to deny writ where defendant made insufficient proffer as to content of witness's expected testimony), *cert. denied*, 409 U.S. 1116 (1973). Moreover, there is nothing in the record indicating that Shields and Byrd would have provided testimony favorable to Murphy, as counsel for Murphy conceded he had been informed by the attorneys for both Shields and Byrd that they were recommending that their clients invoke their Fifth Amendment rights and refuse to testify at Murphy's trial. In this context, Murphy failed to satisfy his burden of proving the relevancy and necessity of Shields' and Byrd's putative testimony.

Accordingly, the District Court did not abuse its discretion by denying Murphy's motions for writs of *habeas corpus ad testificandum*.

B.     Jesse Hamman's Testimony

The District Court did not commit plain error by admitting Hamman's testimony. Murphy contends that this testimony violated his Sixth Amendment right to counsel because Hamman was a "government informant[ ] who had deliberately elicited

7

information after [Murphy] had been indicted[.]" However, this contention fails outright because there is absolutely no evidence whatsoever to support a finding that Hamman was a "government informant."

As the Supreme Court has stated, "the Sixth Amendment is not violated whenever—by luck or happenstance—the State obtains incriminating statements from the accused after the right to counsel has attached." *Maine v. Moulton*, 474 U.S. 159, 176 (1985). For the Sixth Amendment to be violated in the context of a jailhouse informant, "[a]t a minimum . . . there must be some evidence that an agreement, express or implied, between the [informant] and a government official existed at the time the elicitation takes place." *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 893 (3d Cir. 1999) (citation and internal quotation marks omitted).

Murphy has not pointed to any evidence in the record indicating that Hamman reached an express or implied agreement with the Government prior to his jailhouse conversation with Murphy. As such, there is nothing even remotely supporting Murphy's claim that his Sixth Amendment right to counsel was violated.

Accordingly, the District Court did not commit plain error by admitting Hamman's testimony.

C.    Officer Haines' Testimony

The District Court also did not commit plain error by admitting Officer Haines' testimony regarding the contents of Murphy's backpack that was searched by Mifflin County police. Based on the uncontroverted facts of the encounter as described by Officer Haines—including, most importantly, that two of Murphy's associates had

8

outstanding warrants and were suspected drug traffickers, and that Murphy voluntarily consented to the search of the backpack—it simply cannot be said that admission of Haines' testimony was "clear or obvious" legal error. At the least, the issues of whether the police officers had probable cause to arrest Murphy and to conduct a search of the backpack as incident to the arrest, and whether Murphy's voluntary consent to search the backpack was valid, are "subject to reasonable dispute." *See United States v. Marcus*, 130 S. Ct. 2159, 2164 (2010) (an error is plain if, among other things, it is "clear or obvious, rather than subject to reasonable dispute" (citation and internal quotation marks omitted)).

As resolution of these questions is anything but "clear or obvious," *see id.*, the District Court did not commit plain error by admitting Officer Haines' testimony.

V.

For the reasons stated above, we affirm Murphy's conviction and sentence.