**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Harold J. GARMANY, Defendant-Appellant.**

No. 84–7130.

United States Court of Appeals, Eleventh Circuit.

June 11, 1985.

---

David P. Whiteside, Jr., Birmingham, Ala., for defendant-appellant.

Frank W. Donaldson, U.S. Atty., Robert J. McLean, Bill L. Barnett, Asst. U.S. Attys., Birmingham, Ala., for plaintiff-appellee.

Before KRAVITCH, CLARK and PECK[*], Circuit Judges.

KRAVITCH, Circuit Judge:

Appellant, Harold J. Garmany, was convicted on three counts of conspiracy to distribute, dispense, and possess with intent to distribute cocaine, marijuana, and methaqualone, 21 U.S.C. § 846, and one count of conspiracy to introduce packages containing contraband into federal penitentiaries, without the knowledge or consent of the penitentiaries' wardens, 18 U.S.C. § 1791. On appeal, he challenges the district court's requirement that he pay the travel fees of defense witnesses, the court's denial of a motion for a continuance, and other rulings made during the course of his trial. Finding no error, we affirm.

[*] Honorable John W. Peck, U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

## I. BACKGROUND

On August 12, 1982, Garmany was arrested for alleged parole violations and incarcerated in the United States penitentiary in Atlanta, Georgia. Shortly after his arrest, Garmany initiated a scheme to have drugs smuggled to him in prison. To effectuate the plan, friends of Garmany obtained the drugs and assorted paraphernalia that he requested. Steve Kermish, Garmany's attorney since 1978, acted as the conduit in the scheme, bringing the drugs and requested articles with him on his visits to Garmany in prison.

At first, Garmany requested that the drugs be packed in a "keester," a hollow tubular device designed for insertion into the rectum. In the visitors' room at the penitentiary, Kermish passed the keester to Garmany, who inserted the keester unnoticed and returned to his cell. Garmany then devised another method for receiving drugs, enlisting the help of a prison guard, Charles Robinson. Twice Kermish brought cigarette packages into the prison and passed them to Robinson, who gave them to Garmany at his cell. Garmany's friends had replaced these packages' original contents with the drugs and paraphernalia requested by Garmany, and then prepared the packages to resemble ones sold inside the prison.[1] When Robinson became uncomfortable with his role, Garmany found another prison guard, Charles Grady, to assist him. Several times Grady met with Kermish, or another friend of Garmany, outside the prison, picked up the cigarette packages, and delivered them to Garmany's cell.

In November, 1982, Garmany was transferred to the federal correctional institute at Talladega, Alabama, where the drug-smuggling scheme continued. Several of Garmany's friends moved into a home in that city and continued the operations from that site. From November, 1982, through February, 1983, Kermish drove from Atlan-

1. Cigarette packages sold inside the prison were not marked with the federal excise tax stamp.

ta to Talladega several times, picked up drug-filled keesters prepared by Garmany's friends, and delivered them to Garmany in the prison's visitation room. Although Kermish often was accompanied by other individuals on these visits, he would arrange to be alone with Garmany, at which time Garmany would take the keesters.

Acting on a tip of another inmate, prison officials searched Garmany and his cell on May 30, 1983. In Garmany's trouser pocket, they found one-half gram of cocaine wrapped inside a plastic bag. The next day prison officials found Garmany in his cell bleeding from the wrists. Garmany told prison officials that he had slashed his wrists so that "someone would talk to him."

Garmany was charged in a five-count indictment on November 9, 1983. Trial commenced during the first week in January, 1984. The government dropped one of the counts during the trial, and the jury returned a verdict of guilty on the remaining four counts. This appeal ensued.

## II. THE COST OF OBTAINING THE PRESENCE OF INMATE–WITNESSES

▇▇▇▇ To assist the presentation of his defense, Garmany filed petitions for writs of *habeas corpus ad testificandum* for several inmates scattered throughout the federal prison system. As a condition for production of these inmate-witnesses at tri-

al, the district court required that Garmany, who made no claim of indigency, tender the cost of transporting these inmates from their respective prisons to the place of trial, Birmingham, Alabama. Garmany requested the presence of five witnesses who were incarcerated at the federal correctional institute in Talladega, which the United States marshals stated would cost approximately $1,000. Another inmate imprisoned in Lexington, Kentucky, could be produced for $2,000. Two prisoners from Leavenworth, Kansas would cost Garmany $4,000, and an inmate from El Reno, Oklahoma, could be present if Garmany tendered $3,000.[2]

Appellant argues that the costs imposed to obtain the presence of the inmates violated his sixth amendment right to compulsory process. In effect, Garmany states that due to his limited resources, he was forced to be selective in choosing among several essential defense witnesses. This in turn hindered the defense Garmany was able to present at his trial and, according to the appellant, requires reversal of his convictions.

▇▇▇▇ To be sure, a criminal defendant's sixth amendment right to compulsory process is a fundamental component of due process itself. *Washington v. Texas*, 388 U.S. 14, 18–19, 87 S.Ct. 1920, 1922–1923, 18 L.Ed.2d 1019 (1967); *United States v. Garner*, 581 F.2d 481, 488 (5th Cir.1978).[3] To effectively implement this constitutional

---

**2.** The United States marshals provided these figures as "rough estimates." Presumably, if the marshals brought the prisoners to Birmingham for less than the estimated cost, Garmany was entitled to a refund of a portion of the money he tendered for this purpose. See Record at vol. 2, p. 48. It is not clear from the record, and appellant made no allegation in his brief, what the government actually spent to produce these witnesses.

We are not certain how the United States Marshals' Office arrived at the quoted figures. 28 U.S.C. § 1821 sets forth the amounts a subpoenaed witness is entitled to receive as compensation for attending a trial. Of course, witnesses who are serving prison sentences are not in the same position as individuals who are not in custody who must incur costs in order to testify. Thus, inmate witnesses are not entitled

to receive the statutorily prescribed witness fees and travel expenses. *Meadows v. United States Marshal,* 434 F.2d 1007 (5th Cir.1970), *cert. denied,* 401 U.S. 1014, 91 S.Ct. 1265, 28 L.Ed.2d 551 (1971). This does not necessarily relieve a criminal defendant from paying the cost of securing the attendance of inmate-witnesses, which could in some cases be enormous, given that inmates will presumably be accompanied by guards when travelling to and from the trial. Nonetheless, we do not decide whether the amount the court ordered Garmany to tender was in fact excessive.

**3.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

guarantee, the accused has the right to subpoena witnesses on his or her own behalf to testify at a trial. Westen, *Confrontation and Compulsory Process: A Unified Theory of Evidence for Criminal Cases*, 91 Harv.L.Rev., 567, 587 (1978). Federal Rule of Criminal Procedure 17 governs the issuance of subpoenas in criminal cases, and Rule 17(d) prescribes that service of any subpoena, except those issued on behalf of the United States, must be accompanied by payment of witness fees and travel expenses.[4] For a defendant who is financially unable to pay these costs, Rule 17(b) requires the court to subpoena witnesses on that defendant's behalf "upon a satisfactory showing ... that the presence of the witness is necessary to an adequate defense." In such instances, the government bears the cost of securing the attendance of the witnesses. *See* Fed.R. Crim.P. 17(b). Appellant does not challenge the requirement that financially able criminal defendants must bear the cost of bringing their own witnesses to the trial, but rather he alleges that the amounts he was charged here were excessive, and thereby inhibited his right to compulsory process. We cannot agree.

■ First, appellant never raised this contention in the district court. We do not ordinarily consider claims raised for the first time on appeal. *United States v. Silva*, 611 F.2d 78, 80 (5th Cir.1980). Garmany's failure to pursue this claim in the district court also leaves us without a record for evaluating the factual basis for his contentions. As noted above, Rule 17(b) provides that a defendant who is unable to pay associated costs of producing

witnesses can still avail himself of the court's subpoena power. As a threshold matter, however, there must be a satisfactory showing of financial hardship. *United States v. Sprouse*, 472 F.2d 1167 (6th Cir.), *cert. denied*, 411 U.S. 970, 93 S.Ct. 2164, 36 L.Ed.2d 693 (1973). In the court below, not only did Garmany's attorney fail to make any proffer of inability to pay, he stated that Garmany was prepared to tender approximately $8,000 to obtain the necessary inmate-witnesses. As far as we can deem from the record, Garmany in fact paid this amount. Moreover, Garmany was represented at trial by retained counsel, indicating at least that he was not indigent.

■ Aside from this deficiency, appellant's argument does not warrant reversal of his convictions. In *United States v. Valenzuela*, 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982), the Supreme Court held that deportation of potential witnesses who had entered the United States illegally did not violate a criminal defendant's sixth amendment right to compulsory process, where the defendant failed to "make some possible showing of how their testimony would have been both material and favorable to his defense." 102 S.Ct. at 3446–47 (footnote omitted). In the present case, appellant's argument suffers from a similar defect. There is no allegation that the court's action deprived him of any particular witness. Thus, it is not even clear that the costs of producing the witnesses forced Garmany to be selective. Nor do we find any indication as to what any absent witnesses might have testified to. Without this, we cannot say that appellant was deprived of his right to compulsory process.[5]

---

4. Although Rule 17 does not by its terms authorize a court to compel the attendance of an inmate-witness, when read together, the habeas corpus statute, 28 U.S.C. § 2241(c)(5) and the All Writs Act, 28 U.S.C. § 1651(a), provide the federal courts with this power. *See, e.g., United States v. Hayman*, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1952). Unlike a subpoena, which orders the individual whose testimony is sought to attend the trial, the writ of *habeas corpus ad testificandum* runs to the custodian of the potential witness. Presumably, Rule 17's procedural considerations would apply to issuance of a writ of *habeas corpus ad testificandum*. *See*

*United States v. Owen*, 580 F.2d 365 (9th Cir. 1978); *United States v. Rigdon*, 459 F.2d 379 (6th Cir.1972), *cert. denied*, 409 U.S. 1116, 93 S.Ct. 917, 34 L.Ed.2d 700 (1973).

5. Appellant relies on *Story v. Robinson*, 689 F.2d 1176 (3d Cir.1982), arguing that there is no authority for ordering that a prison custodian be compensated for compliance with a writ of habeas corpus ad testificandum. Whatever the relevance of *Story* to this case, at most it might support a claim for a refund if Garmany in fact overpaid for production of witnesses.

We hold, therefore, that the imposition of the expenses did not abridge appellant's constitutional right.[6]

### III. DENIAL OF DUE PROCESS

#### A. *Appellant's Request for a Continuance*

Eleven days prior to trial, Garmany requested that his trial be postponed. In support of the motion for continuance, Garmany's counsel, J. Wilson Dinsmore, stated that circumstances prevented him from devoting time to his client's case until the middle of December. Further, Garmany was in Talladega's Administrative Segregation Unit during the pretrial period, which, according to Dinsmore, limited Garmany's access to a telephone. Prisoners with information relevant to Garmany's defense were scattered throughout the country, which, Dinsmore asserted, made it impossible to interview them. Finally, counsel urged that the prosecution had refused to permit discovery of government witnesses, further contributing to the defense's inability to prepare its case. Simultaneously with the filing of this motion, Garmany sought several writs of *habeas corpus ad testificandum* in an effort to obtain witness testimony.

On January 3, 1984, at a hearing on the motion for a continuance, counsel vigorously pursued his request for additional time. According to Dinsmore, in the early part of December, he was unable to discuss the case with Garmany because of prison rules limiting the number of phone calls made by inmates in administrative segregation. On several occasions when Garmany was able to use the phone, Dinsmore was not at his office. Each time Garmany contacted counsel by phone, prison guards stood close by, inhibiting Garmany from discussing the case freely. On one occasion, a prison guard had even ordered Garmany to discontinue a phone conversation with Dins-

more. Counsel admitted that since the middle of December he was able to discuss the case in person with Garmany by traveling to Talladega. Efforts to interview potential witnesses among the Talladega inmates, however, were frustrated. Counsel stated that he was told on December 17, 1983, that he could not speak with any inmate unless he was acting as that inmate's attorney or was on a visitation list. Two weeks later, counsel drove to the prison expecting to discuss Garmany's case with several inmates, but a prison official turned him away.

At the continuance hearing, the government attempted to rebut Dinsmore's assertions that he was denied access to his client and witnesses. According to the government, Garmany was permitted to make numerous phone calls despite his presence in the administrative segregation unit of the prison. That he did not always choose to call his attorney was a problem created by his own action. The government also contended that on the date Garmany's attorney was prevented from interviewing inmates, counsel in fact had shown up at the prison, unannounced, during a holiday period. Under the circumstances, the government urged, it was unrealistic for Dinsmore to expect that he could meet with whomever he wanted.

The district court denied the motion for a continuance, but assured Dinsmore that any writ sought for production of an inmate-witness would be granted. The court recessed until the next afternoon when the jury was impaneled. Trial began the morning of January 5, 1984. Some inmates were not produced until the trial began, requiring counsel to interview them at that time. Only four of the thirteen inmates for whom writs were granted ultimately testified at trial.

Appellant now contends that the district court's actions denied him due pro-

---

**6.** Prior to oral argument, appellee moved to supplement the record with a portion of the United States Marshal's Service Manual, which provides that private litigants who wish to have federal prisoners testify on their behalf must bear the cost of bringing the prisoner to court. A panel of this court ordered that the motion be carried with the case. Because of the disposition of this issue, there is no need to supplement the record, and the motion is denied.

cess, in that he was not prepared to go to trial. Because of the great latitude that must be afforded a trial judge in scheduling matters, a trial court has broad discretion in ruling on requests for continuances. *Morris v. Slappy,* 461 U.S. 1, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983). As a reviewing court, we will disturb a trial court's ruling on a continuance only if it amounts to an abuse of discretion. *United States v. Darby,* 744 F.2d 1508, 1521 (11th Cir.1984). This issue must be decided in light of the circumstances presented, focusing upon the reasons for the continuance offered to the trial court when the request is denied. *United States v. Uptain,* 531 F.2d 1281, 1286 (5th Cir.1976).

The *Uptain* court delineated numerous considerations relevant to reviewing the denial of a continuance when the request was based upon a claim of inadequate preparation time:

> We have deemed the following factors highly relevant in assessing claims of inadequate preparation time: the quantum of time available for preparation, the likelihood of prejudice from denial, the accused's role in shortening the effective preparation time, the degree of complexity of the case, and the availability of discovery from the prosecution. We have also explicitly considered the adequacy of the defense actually provided at trial, the skill and experience of the attorney, any preappointment or prepretention experience of the attorney with the accused or the alleged crime, and any representation of the defendant by other attorneys that accrues to his benefit.

531 F.2d at 1286–87 (footnotes omitted). *Uptain* involved a request for a continuance to enable counsel to interview potential witnesses, among other things. The Fifth Circuit noted that this was a particularly common reason offered to justify a request for postponement, and the court made additional observations that guide our inquiry:

> The panels of this court that have ruled on such claims have considered the diligence of the defense in interviewing witnesses and procuring their presence, the probability of procuring their testimony within a reasonable time, the specificity with which the defense is able to describe their expected knowledge or testimony, the degree to which such testimony is expected to be favorable to the accused, and the unique or cumulative nature of the testimony.

531 F.2d at 1287 (footnotes omitted); *see also United States v. Miller,* 513 F.2d 791, 793 (5th Cir.1975). Applying the pertinent factors to the case before us, we conclude that the trial court did not abuse its discretion in denying appellant's requests.

■ To the extent appellant's claim is based upon his inability to interview witnesses, it must be rejected. We assume for purposes of this case that counsel was diligent in his efforts to locate witnesses prior to trial. The fatal flaw in appellant's argument remains. The district court granted every request made by counsel to compel the presence of potential witnesses. Appellant does not suggest the name of even one other witness who could have been located if a continuance had been granted. This alone is sufficient to refute appellant's contention that postponement was necessary. *Uptain,* 531 F.2d at 1289. *Compare Dickerson v. Alabama,* 667 F.2d 1364, 1370–71 (11th Cir.) (denial of continuance, which prevented defense from presenting non-cumulative, relevant testimony of alibi witness, violated right to compulsory process), *cert. denied,* 459 U.S. 878, 103 S.Ct. 173, 74 L.Ed.2d 142 (1982). It is true counsel's questionings were conducted on the eve of trial, and in some cases, after proceedings had commenced. Yet we find nothing to indicate that this somehow inhibited his ability to conduct these interviews, many of which could have taken place during a weekend recess.

We also reject the claim that the general lack of time to prepare for trial requires that we conclude the district court abused its discretion. Garmany was indicted on November 9, 1983, his attorney entered an appearance two weeks later, and trial did not commence until the first week in Janu-

ary. The record indicates that Garmany and his attorney met at least once prior to the indictment. It is true that the adequacy of preparation time was decreased for a number of reasons. According to Dinsmore, he had to attend to other matters for the first three weeks following the entry of his appearance. We are, however, wary of countenancing eleventh-hour requests for additional time made by lawyers who claim they have been "too busy" to prepare for trial.

More important are the allegations that prison officials denied counsel access to his client during the post-indictment period. These contentions, although serious if true, are not sufficient to persuade us to reverse Garmany's convictions, as we are not convinced that denial of the continuance prejudiced Garmany's defense. *See United States v. Astling,* 733 F.2d 1446, 1452–53 (11th Cir.1984). The case against Garmany was relatively straightforward, both factually and legally. To be sure, the government's case, bolstered with the testimony of several of Garmany's partners in crime, was a strong one. Therefore, appellant had a difficult task indeed in attempting to avoid conviction. Yet, Dinsmore, an experienced criminal defense attorney, subjected nearly every government witness to rigorous cross-examination. In fact, appellant does not suggest any specific deficiencies in Dinsmore's performance. Nor is there any indication that more time would have permitted Dinsmore to prepare additional necessary pretrial motions, or to develop a stronger case for the defense.

Finally, with respect to discovery from the prosecution, although the government did not provide much material to the defense through this process, there is no indi-

cation that the government violated any discovery order or that the lack of discovery was in fact prejudicial. Accordingly, we hold that the district court's denial of appellant's request for a continuance did not constitute an abuse of discretion.

### B. *Government Intimidation of Witnesses*

In the court below, Garmany moved for a mistrial four days after commencement of the proceedings, claiming that Talladega prison officials decided to transfer an inmate, James Dennis, to a prison in Minnesota, by way of El Reno, Oklahoma, to prevent Dennis from testifying at Garmany's trial.[7] Garmany now seeks reversal of his convictions on this basis. Although government intimidation of defense witnesses can constitute a denial of due process, *United States v. Pepe,* 747 F.2d 632, 654 (11th Cir.1984), appellant here has failed to justify reversal. In order to substantiate his constitutional claim, appellant must establish, as a threshold matter, that the government's action worked to deprive him of a witness who could have testified on his behalf. *See United States v. Henao,* 652 F.2d 591, 592 (5th Cir.1981) (Unit B);[8] *Freeman v. Georgia,* 599 F.2d 65, 69 (5th Cir.1979), *cert. denied,* 444 U.S. 1013, 100 S.Ct. 661, 62 L.Ed.2d 641 (1980). Although the record is not precise on this point, it appears that Dennis was transferred some time prior to commencement of Garmany's trial. The district court then issued a writ ordering that Dennis be brought to appear for Garmany's trial, at Garmany's request. Dennis apparently was prepared to testify, but was never called as a witness. There is no indication that this decision resulted from Dennis'

---

**7.** In opposition to Garmany's request for a mistrial, the government argued that Dennis was scheduled to be incarcerated at Talladega only for a short period of time and that the transfer was routine. There was no hearing conducted to determine whether the transfer was motivated by any ill-will, because the trial court ruled that the matter could be brought forth through Dennis' testimony. Appellant's failure to call Dennis to the stand, or to preserve his testimony in some other manner, leaves us without any

basis for evaluating the competing contentions. Given our holding on this claim, however, it is not necessary to determine what actually happened.

**8.** The Eleventh Circuit, in *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982), adopted as precedent decisions of the former Fifth Circuit, Unit B, rendered after September 30, 1981.

fear of retaliation by prison officials; it appears to have been the product of a reasonable strategic decision not to offer his testimony. Given appellant's failure to make the requisite showing, we hold that there was no due process violation.

## IV. OTHER ISSUES

### A. *Discovery of Appellant's Statement*

Prior to trial, Garmany asked the court to order the prosecution to turn over a copy of the statement he made to prison officials while he was recovering from his wounds. The government responded by agreeing to provide all relevant portions of this statement, but notified Garmany that it would seek a protective order to prevent disclosure of the balance of the statement. This protective order was sought and granted *ex parte* on December 20, 1983. The prosecution did not introduce any portion of appellant's statement during the case-in-chief. When defense counsel announced Garmany's intention to take the stand, the government gave him a copy of this entire statement, stating that it intended to use it for cross-examination purposes. Upon reading the statement, defense counsel returned to court the next day claiming that revelation of Garmany's entire statement caused a complete change in strategy. No longer would Garmany testify in his own defense. In fact, the defense rested.

 Appellant claims that prior to trial, the court should have permitted discovery of the entire statement. Assuming that the statement should have been produced to the defense under Federal Rule of Criminal Procedure 16(a)(1)(A),[9] we note that the government announced its intention to secure a protective order as to a portion of the statement. Though the government obtained this order *ex parte*, it should have been obvious to Garmany that the prosecu-

tion had produced only a portion of his statement. Yet, Garmany made no objection until the government revealed the remainder of the statement during trial. Even now, appellant does not challenge the basis for the protective order. Further, even if the statement should have been discovered at an earlier date, appellant's bare allegation that the postponed discovery caused him to redesign completely his defense does not fulfill his burden of establishing prejudice. *See United States v. Pascual,* 606 F.2d 561, 565 (5th Cir.1979).

### B. *Evidentiary Rulings*

 Appellant challenges the introduction into evidence of certain statements made by Garmany, as testified to by a government witness. Such statements were clearly admissible as admissions by a party opponent. Fed.R.Evid. 801(d)(2)(A).

 Finally, Garmany claims that the government should not have been allowed to substitute a photocopy, in lieu of the original, of a check drawn on a trust account of Steve Kermish's former law firm. A duplicate is admissible to the same extent as an original unless there is a genuine issue raised as to the copy's authenticity, or unless submission of the duplicate would be unfair under the circumstances. Fed.R.Evid. 1003. The burden of challenging admissibility of a photocopy rests with the party against whom it is offered. *United States v. Georgalis,* 631 F.2d 1199 (5th Cir.1980). Appellant does not explain why the trial court should not have admitted the duplicate. Hence, we are unpersuaded that the court's decision was erroneous.

## V. CONCLUSION

Having reviewed the record, we find no merit to appellant's contentions. The convictions are therefore AFFIRMED.

---

**9.** This rule provides in pertinent part:

Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph: any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government; the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent....