[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 12-11084, 13-15343
_____

D.C. Docket No. 1:10-cr-00006-CAP-JFK-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

KARA SINGLETON ADAMS,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(June 11, 2015)

Before MARCUS and JILL PRYOR, Circuit Judges, and HINKLE,[*] District
Judge.

PER CURIAM:

_____
[*]Honorable Robert L. Hinkle, United States District Judge for the Northern District of
Florida, sitting by designation.

Kara Adams appeals her convictions and sentence of 210 months' imprisonment for running Georgia-based telemarketing businesses that defrauded their customers. At trial, a jury heard testimony that the businesses represented themselves as third-party negotiators who could influence credit card companies to reduce customers' interest rates, when in fact Ms. Adams's businesses frequently failed to secure rate reductions and typically only provided customers with meager, unsolicited financial planning advice instead. The jury found her guilty of conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. §§ 371, 1341, and 1343; wire fraud, in violation of 18 U.S.C. §§ 1343 and 2326; illegally structuring financial transactions, in violation of 31 U.S.C. §§ 5324(a)(1) and 5324(a) and 31 CFR Part 103; and conspiracy to commit obstruction of justice, in violation of 18 U.S.C. §§ 371 and 1512(c)(2).

On appeal, Ms. Adams argues that the district court erred by (1) denying her motion to continue trial even though she needed more time to mine information from a database she argues was critical to the defense or, in the alternative, denying her motion for new trial after she gleaned some of that information; (2) admitting evidence of a Florida state civil investigation into her previous business ventures; (3) admitting testimony from a Florida investigator that referenced consumer complaints about those businesses; and (4) imposing a

2

sentence that was substantively unreasonable.  With the benefit of oral argument, and after careful review, we affirm her convictions and sentence.

I.

In 2008 and 2009, Ms. Adams's various businesses initiated phone calls from Georgia to consumers across the country in which a live representative or a prerecorded message invited consumers to speak about lowering their credit card interest rates.[1]  Then, reading from a script, live representatives explained that, for a fee, the business would negotiate with credit card companies for rate reductions on its customers' behalf.  The representatives claimed that Ms. Adams's businesses had special relationships with credit card companies and guaranteed the service would save customers at least $4,000 in their credit card payments over time.  The representatives promised that if the guaranteed savings were not achieved, the customer would receive a refund of the cost of the program, which was typically between $749 and $1,495.  Using this pitch, Ms. Adams's businesses attracted thousands of customers and generated revenue in the tens of millions of dollars.  At trial, the government sought to prove the business model was a fraud.  Customers testified that there appeared to be no special relationships between Ms. Adams's businesses and the credit card companies because, on three-way calls with the

---

[1] Though the business model remained the same, Ms. Adams and her associates cycled through many different corporate entities and business names.  They switched entities whenever a business generated too many complaints or lost a merchant account due to excessive chargebacks.

3

customer, Ms. Adams's representatives simply made requests for reductions that the credit card companies denied. Ms. Adams's employees testified that no such special relationships existed. Despite the emphasis that representatives placed on rate reduction in sales calls, the primary service the businesses provided was a financial analysis that described how customers should structure their credit card payments to achieve the promised savings. Employees and customers testified that, at best, these analyses merely instructed customers to follow an aggressive payment plan, and, at worst, they also contained inaccurate calculations and overestimated savings.

Naturally, some unsatisfied customers asked for refunds. Employees testified that Ms. Adams instituted policies to protect her sales regardless of the merit of a customer's complaint: she set quotas for refunds, fought all chargebacks from credit card companies,[2] and instructed employees to alter analyses if they did not reflect the guaranteed savings. Accordingly, customers testified that they failed to obtain refunds despite their persistent attempts. The government also introduced evidence of a Florida state civil investigation into similar business operations Ms. Adams ran in that state, to demonstrate both that she knew her

---

[2] A chargeback is a process by which a credit card company challenges the validity of a transaction in which a business has charged a customer. The process requires the business to respond to the customer's complaint with a justification of the transaction, called a rebuttal.

practices were illegal and that she had a reason to flee to Georgia to begin her scheme anew.

The trial took place between October 24, 2011 and November 7, 2011, over twenty-one months after a grand jury returned the first indictment in the case in January 2010. Trial had originally been set for December 6, 2010, but the parties filed several motions to continue due to voluminous discovery. Not long after Ms. Adams filed her first motion to continue trial on April 15, 2011, she discovered that one of her businesses' computer servers, which had been in the possession of a Federal Trade Commission ("FTC") receiver for over a year due to a related civil case, contained a database called "ApSuite" (the "database") that included customer tracking information that might support a defense theory that she ran legitimate businesses. On August 30, 2011, due to technological barriers that prevented her from accessing information in the database, Ms. Adams filed—and the district court granted—another motion to continue trial. Finally, at a pretrial conference on October 20, 2011, Ms. Adams made an oral motion to continue trial again for the same reason. The district court denied this motion, and the trial proceeded as planned four days later.

The jury convicted Ms. Adams of one count of conspiracy to commit mail and wire fraud, nine counts of wire fraud, seven counts of structuring financial transactions, and one count of conspiracy to commit obstruction of justice. On

February 9, 2012, the district court sentenced her to 210 months' imprisonment. Ms. Adams timely appealed the judgment. In the meantime, she continued trying to access the database. Once she was able to glean usable information from the database, Ms. Adams filed a motion for new trial, which the district court denied on September 20, 2013. She appealed that order, and we consolidated her appeals.

## II.

Ms. Adams first argues that the district court erred in denying her final motion to continue trial and her later motion for new trial because information extracted from the database would have been critical to her defense. According to Ms. Adams, the database contains customer tracking information showing that many customers received rate reductions and were satisfied with the program. Although Ms. Adams failed to satisfy all her customers, she contends these mixed results could persuade a jury that at least she did not intend to defraud her customers. We disagree. Given the negligible value of the evidence she ultimately extracted from the database and her failure to pursue the contents of the database diligently before trial, we affirm both of the district court's orders.

## A.

"We review a district court's denial of a motion for continuance only for an abuse of discretion." *United States v. Valladares*, 544 F.3d 1257, 1261 (11th Cir. 2008). "To prevail on such a claim, a defendant must show that the . . . abuse of

6

discretion . . . resulted in specific substantial prejudice." *United States v. Verderame*, 51 F.3d 249, 251 (11th Cir. 1995). "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Id.* (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).

> [T]he following factors [are] highly relevant in assessing claims of inadequate preparation time: the quantum of time available for preparation, the likelihood of prejudice from denial, the accused's role in shortening the effective preparation time, the degree of complexity of the case, and the availability of discovery from the prosecution.

*United States v. Garmany*, 762 F.2d 929, 936 (11th Cir. 1985) (quoting *United States v. Uptain*, 531 F.2d 1281, 1286-87 (5th Cir. 1976)).[3]

Although we must consider only the reasons that Ms. Adams presented at the time of her motion to continue trial, we also must "examine the trial court's denial of a continuance in light of what an examination of the discovery material reveals to defense counsel after the trial." *United States v. Medina-Arellano*, 569 F.2d 349, 354 (5th Cir. 1978). In effect, we may examine the record supporting Ms. Adams's motion for new trial to determine if the database would have been as useful as Ms. Adams hoped during the pretrial conference. The evidence included

---

[3] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

affidavits from the defense team describing the difficulty of accessing the database and the team's follow-up investigation into its contents and listing six witnesses identified through that investigation who could testify that their credit card interest rates were reduced after purchasing Ms. Adams's program.

We conclude that very little, if any, prejudice resulted from Ms. Adams's inability to access the database to her satisfaction in time for trial. The testimony of six witnesses who received rate reductions would have been wholly insufficient to rebut the government's theory of prosecution, which contemplated that credit card companies might occasionally respond positively to the straightforward requests that Ms. Adams's businesses made on behalf of customers. Indeed, employees testified that some rate reductions occurred. The government's theory of fraud was that Ms. Adams misrepresented that her businesses had special relationships with credit card companies and that she would refund any customer who did not obtain the guaranteed savings. Even a customer who received a rate reduction might still have been injured by Ms. Adams's fraud if the customer received a fabricated financial statement or failed to obtain a deserved refund. Thus, the database would not have been useful to the defense in rebutting the government's case at trial.

Further, Ms. Adams herself played a large role in shortening the time available before trial to access the database. She argues that she only learned of

8

the database's location in May 2011 when her technician examined property in the

FTC receiver's possession. Contrary to her insistence that the government gave

her no guidance in finding the database, however, the government had mailed her a

letter a year earlier, in May 2010, disclosing that the FTC possessed, among other

things, computers and servers seized in the related civil case. We cannot say that

the five months between May and October of 2011 was too small a window for

Ms. Adams to access the database when she waited a year to investigate the

contents of those computers and servers. Ms. Adams had promised in her second

motion to continue trial that "[t]he defense [would] not request another

continuance in this case." *United States v. Adams*, No. 1:10-CR-00006-CAP-JFK-

1, Doc. 268 at 13 (N.D. Ga. Aug. 30, 2011). By the time of the pretrial conference,

when the district court ruled on the oral motion to continue, witnesses' travel

arrangements had been set. The district court did not abuse its discretion by

proceeding to trial as planned.

## B.

"We review the district court's denial of a motion for new trial based on

newly discovered evidence for abuse of discretion." *United States v. Vallejo*, 297

F.3d 1154, 1163 (11th Cir. 2002). The district court's analysis in considering a

motion for new trial based on new evidence is similar to, if distinct from, the

9

analysis required in considering a motion to continue trial in order to examine

discovery further.

> When a defendant discovers new evidence after trial that was
> unknown to the government at the time of trial, a new trial is
> warranted only if: (1) the evidence was in fact discovered after trial;
> (2) the defendant exercised due care to discover the evidence; (3) the
> evidence was not merely cumulative or impeaching; (4) the evidence
> was material; and (5) the evidence was of such a nature that a new
> trial would probably produce a different result.

*United States v. Thompson*, 422 F.3d 1285, 1294 (11th Cir. 2005) (internal

quotation marks omitted).  In the context of a motion for new trial, we are

expressly instructed that "[t]he failure to satisfy any one of these elements is fatal"

to the motion.  *Id.* (internal quotation mark omitted).

The facts informing our review of the district court's denial of Ms. Adams's

motion for new trial are identical to those justifying the denial of her motion to

continue trial.  She failed to exercise due care in locating and accessing the

database between May 2010 and May 2011, and the affidavits attached to her

motion failed to demonstrate that the database yielded non-cumulative evidence

that would probably produce a different result in a new trial.  *See id.*  The district

court did not abuse its discretion in denying the motion.

### III.

Ms. Adams next argues that the district court improperly admitted evidence

of a Florida civil investigation and settlement negotiations arising out of similar

10

conduct not specified in the indictment.  At trial, she renewed a motion *in limine* to exclude this evidence under Federal Rules of Evidence 403 and 404(b) on the grounds that it was impermissible character evidence.  To be admissible under Rule 404(b), "other crimes" evidence must satisfy a three-part test:  "(1) the evidence must be relevant to an issue other than the defendant's character; (2) the act must be established by sufficient proof to permit a jury finding that the defendant committed the extrinsic act;" and (3) any undue prejudice must not substantially outweigh its probative value, "and the evidence must meet the requirements of Rule 403." *United States v. Zapata*, 139 F.3d 1355, 1357 (11th Cir. 1998).  Although the grounds for Ms. Adams's Rule 404(b) objection were more extensive at trial, her only argument in support of this objection on appeal is that the government failed to prove that she actually did engage in similar conduct in Florida.

Because Ms. Adams preserved her evidentiary challenge at trial, we review the district court's ruling for an abuse of discretion. *United States v. Baker*, 432 F.3d 1189, 1202 (11th Cir. 2005).  We conclude that the evidence properly was admitted.  The requirement that the government provide "sufficient proof so that a jury could find that the defendant committed the extrinsic act" is "part of the relevance analysis" the district court must conduct. *United States v. Miller*, 959 F.2d 1535, 1538 (11th Cir. 1992) (*en banc*).  In other words, Ms. Adams's

11

evidentiary challenge on appeal is, in essence, a broad challenge to the relevance of the civil investigation. Even if there were no evidence that Ms. Adams was responsible for the fraud suspected in the Florida civil investigation, evidence of the investigation remains relevant to her intent because it shows she was on notice that certain telemarketing practices were fraudulent. Ms. Adams's argument that the government failed to prove she actually committed fraud in Florida is therefore misplaced. The district court did not abuse its discretion in admitting evidence of the Florida civil investigation.

IV.

Ms. Adams appeals one other evidentiary ruling by the district court pertaining to related conduct in Florida. At trial, she objected on hearsay grounds to the admission of a Florida state investigator's testimony summarizing consumer complaints about the businesses she ran there before moving to Georgia. The district court overruled her objection. The investigator then testified that the primary complaint he received regarding Ms. Adams's businesses was that they made misrepresentations to consumers. His testimony included a brief, general account of the businesses' sales pitch, the nature of their interactions with consumers, and their pattern of failing to respond to complaints and issue refunds. On appeal, Ms. Adams challenges the hearsay ruling and newly asserts that the admission of this testimony also violated her rights under the Confrontation Clause

12

of the Sixth Amendment because she had no opportunity to cross-examine the consumers, whose statements to the investigator were testimonial in nature.

We review the district court's ruling on Ms. Adams's hearsay objection for an abuse of discretion, *see Baker*, 432 F.3d at 1202, but, because it was not made below, we review her new Confrontation Clause argument for plain error. *See United States v. Chau*, 426 F.3d 1318, 1321-22 (11th Cir. 2005) ("[A] hearsay objection does not preserve the *Crawford* [Confrontation Clause] issue . . . ."). In either case, we find no error. The investigator described the nature of the complaints generally, rather than any specific statements that were made. Further, the government did not introduce any individual complaints or a summary of complaints to prove their truth. Instead, the testimony explained the purpose and nature of the investigator's own work in Florida and clarified the sequence of events that led him to refer the investigation to interested authorities in Georgia. Accordingly, his testimony was not hearsay,[4] and its admission did not violate the Confrontation Clause. *See* Fed. R. Evid. 801(c)(2); *Crawford v. Washington*, 541

---

[4] Because we conclude the investigator's testimony was not inadmissible hearsay, we need not perform a harmless error analysis. In his concurrence, Judge Hinkle concludes that some of the testimony was inadmissible hearsay because the investigator went beyond the nature of the complaints to "what Ms. Adams's businesses actually did." *United States v. Adams*, __ Fed. App'x __ (11th Cir. 2015) (Hinkle, J., concurring). In our view, the investigator's brief description of what the businesses purported to offer and how they interacted with consumers was necessary to understand, and thus integral to, the nature of the complaints.

U.S. 36, 59 n.9 (2004) ("The Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.").

## V.

Finally, Ms. Adams argues that her sentence of 210 months' imprisonment was substantively unreasonable.  Specifically, she argues that the district court failed to consider adequately the sentencing factors articulated in 18 U.S.C. § 3553(a) in two ways:  (1) the district court ignored the "modesty of the individual impact" of the fraud on each customer;[5] and (2) the disparity between her sentence and those of her codefendants was unwarranted because, according to Ms. Adams, she was penalized for going to trial.  We reject these arguments and affirm her sentence.

We review the substantive reasonableness of a sentence for an abuse of discretion, vacating the sentence only if we "are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case."  *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (*en banc*) (internal quotation marks omitted).  Although the district court must evaluate all the § 3553(a) factors, it is free to

---

[5] Appellant's Br. at 83.

14

assign "great weight" to any one of the factors. *United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009) (internal quotation marks omitted).

The district court noted on the record that it had considered the § 3553(a) factors in arriving at Ms. Adams's sentence, which was at the high end of the guideline range but still within it. We agree with the district court's reasoning that the victims in this case were likely vulnerable, even if their losses might appear modest in comparison to victims' losses in some other fraud cases. In any event, the district court did not abuse its discretion in emphasizing the nature of the offense or the need for deterrence in like cases.

Nor did the district court abuse its discretion in sentencing Ms. Adams to a significantly higher sentence than cooperating codefendants who entered into plea agreements. We acknowledge that the district court must "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . ." 18 U.S.C. § 3553(a)(6). Nevertheless, "defendants who cooperate with the government and enter a written plea agreement are not similarly situated to a defendant who provides no assistance to the government and proceeds to trial." *United States v. Docampo*, 573 F.3d 1091, 1101 (11th Cir. 2009). This analysis precludes comparison of two defendants "even when the sentence the cooperating defendant receives is 'substantially shorter.'" *Id.*

(quoting *United States v. Williams*, 526 F.3d 1312, 1323 (11th Cir. 2008)).  Thus, we cannot say that Ms. Adams's sentence is substantively unreasonable.

## VI.

For the foregoing reasons, Ms. Adams's convictions and sentence are

**AFFIRMED.**

HINKLE, District Judge, concurring:

I concur in the result and in all of the opinion except section IV.  Section IV addresses a hearsay objection to a Florida state investigator's testimony about events in Florida prior to the charged conduct in Georgia.

The chronology at trial was this.  The government asked the investigator the nature of the complaints the State of Florida received about Ms. Adams's businesses.  The defense objected based on hearsay.  The court overruled the objection, saying the investigator could testify about the nature of the complaints. The ruling was correct, for the reasons explained in section IV of the majority's opinion.

The difficulty is that the investigator went further, testifying not just to the nature of the complaints, but to what Ms. Adams's businesses actually did.  At least some of that testimony was inadmissible hearsay.  But the defense did not object again.  The defense did not ask the court to block or strike the testimony.

In short, the court was asked to rule just once—on the initial hearsay objection—and the court got it right.  The defense should not be heard on appeal to complain about testimony that came in without further objection after a correct ruling on the only objection that was made.  This makes it unnecessary to address whether this testimony was harmless.

17