[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-15933

_____

D.C. Docket No. 1:15-cr-20611-UU-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHNATHAN HAWTHRONE,
a.k.a. Jonathan Waldon Hawthorne,
a.k.a. Moose,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 28, 2018)

Before ED CARNES, Chief Judge, ROSENBAUM, and HULL, Circuit Judges.

PER CURIAM:

A jury found Jonathan Hawthorne guilty of one count of possession of a firearm and ammunition by a convicted felon, and the district court entered a judgment of conviction on the verdict.[1]  After finding that he was an armed career criminal, the district court sentenced him to 480 months in prison.  Hawthorne appeals his conviction and sentence.

I.

A.

In July 2014 Qiandra Smith and her mother, Kimberly Johnson, were sitting outside their home with some children they were watching, one of whom was Smith's two-year-old son, Xavier.  As Smith was speaking with a neighbor that she knew as "Fly," Hawthorne, whom Smith knew as "Moose," approached and interrupted them.  Hawthorne and Fly were rival drug dealers, and their rivalry became violent that day.

Hawthorne pulled out a pistol; Fly did too.  With his weapon trained on Fly, Hawthorne backed up toward Smith and used his free hand to grab two-year-old Xavier, using the little boy as a human shield.  As Smith was trying to get into her home, Hawthorne, with his pistol still drawn, pushed her down and entered the home.

---

[1] Although Hawthorne was indicted under the name Hawthrone and the style of the case refers to him as Hawthrone, his counsel stated at oral argument that his client's legal name is Hawthorne.  We will refer to him as Hawthorne.

Hawthorne abandoned the pistol but drew a rifle from his pants and went back outside. After telling Smith that "everybody [was] going down," Hawthorne fired the rifle. The bullet ricocheted off a wall and hit Johnson. Hawthorne fled the scene.

Smith immediately called 911, telling the dispatcher that a person named "Moose" had shot Johnson's hand and that Johnson was "bleeding a lot." Authorities searched the crime scene for evidence, and found, among other things, four rifle bullets and a .40 caliber Smith and Wesson pistol that was loaded with thirteen bullets (the capacity of the magazine is not clear from the record). They did not find the rifle magazine or the rifle.

### B.

In August 2015 a federal grand jury issued a one-count indictment against Hawthorne. The lone count charged him with possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). The indictment specified that the firearm Hawthorne had possessed was an "American Tactical, .40 Smith and Wesson pistol," and that the ammunition he had possessed was four "rounds of 7.62 x .39 caliber ammunition" and thirteen "rounds of .40 caliber ammunition."

Hawthorne pleaded guilty under a written plea agreement, which stated that his maximum term of imprisonment was ten years. That ten-year maximum was

based on the assumption that he did not have three prior convictions for "violent felonies" or "serious drug offenses," which would require a sentence enhancement under the Armed Career Criminal Act (ACCA) and a mandatory minimum sentence of 15 years. See 18 U.S.C. § 924(e); United States Sentencing Guidelines § 4B1.4 (Nov. 2015).[2] Before his sentence hearing, however, the probation office discovered that Hawthorne was subject to an ACCA enhancement based on a 1992 Florida conviction for resisting a police officer with violence and two 1994 Florida convictions for possession with intent to sell cocaine. The district court allowed Hawthorne to withdraw his guilty plea.

Less than two weeks before trial, Hawthorne moved for a continuance on the ground that he would need time to review evidence that he had requested from the government, including an analysis of DNA that had been swabbed from the pistol that he was charged with possessing. The district court denied that motion. And on the morning of trial, Hawthorne again moved for a continuance on the ground that he needed time to have the DNA swab analyzed because the government had decided not to have it done. He asserted, for the first time, that a DNA analysis

---

[2] In addition to his plea agreement, Hawthorne signed a factual proffer stating that had the government proceeded to trial, it would have proven beyond a reasonable doubt that he had previously been convicted of a felony; that on July 1, 2014, he "was in possession of a loaded Smith and Wesson American Tactical . . . .40 caliber firearm"; and that as a result he had violated § 922(g)(1). At his plea colloquy the district court asked him whether he agreed with all of the facts stated in the factual proffer. He replied under oath that he did.

4

would show that someone had planted at the scene the pistol that Hawthorne had been charged with possessing. The district court denied that motion.

At trial, the government presented a host of testimony and documentary evidence. Smith testified that in July 2014, she saw "Moose" pointing a gun at Fly in the presence of "approximately five small kids," all under the age of four. She also testified that Hawthorne grabbed her two-year-old son, Xavier, by the back of the shirt with a gun in his hand, and that he said to her, "Bitch, get out of the way," as he forced his way into her home. She stated that after Hawthorne dropped the first gun, he drew a "rifle type of gun" that he fired at her mother, Johnson. "Blood [was] just everywhere," Smith added.

Johnson corroborated Smith's testimony, and added that Hawthorne used her "grandson [Xavier] as his [human] shield" while pointing the first gun that he drew — a pistol — at Fly. Johnson also said that after Hawthorne shot her, her hand was "leaking [blood] profusely." And Clement Seymour, a neighbor who was passing by at the time of the incident, testified that he had "no doubt" that he saw "Moose" holding "some kind of automatic rifle," that he ducked for cover right before he heard a gunshot, and that when he looked up, he saw that Johnson "had something around her hand," and he heard her say "I got shot."

The government also introduced the tape of the 911 call during which Smith said that "Moose" had shot Johnson in the hand. The government showed the jury

5

photos of Johnson's injured hand and of her blood on the ground.  And it had a police officer testify about a chart that he had created before the shooting that compiled the pictures, nicknames, and real names of the individuals on the officer's beat, including a person known as "Moose."  The district court precluded Hawthorne from calling an expert witness to testify about the form and function of firearms after finding that Hawthorne had not given the government sufficient notice of his intent to do so.

The jury found Hawthorne guilty of being a felon in possession of a firearm and ammunition, and the district court, after concluding that he qualified as an armed career criminal, sentenced him to 480 months in prison.

## II.

Hawthorne raises two primary issues related to his trial, contending that the district court should have granted him a continuance and should not have excluded his firearms expert.  We review both of those rulings only for an abuse of discretion.  See United States v. Valladares, 544 F.3d 1257, 1261 (11th Cir. 2008); United States v. Frazier, 387 F.3d 1244, 1258 (11th Cir. 2004).

## A.

Hawthorne argues that the district court abused its discretion in denying his two motions for a continuance.  He asserts that he needed more time for an

6

analysis of the DNA that was swabbed from the pistol he was charged with possessing.  We disagree.

We will reverse a district court's denial of a motion for continuance only if the defendant shows that the denial caused "specific substantial prejudice." Valladares, 544 F.3d at 1262.  Where, as here, we review a denial of a motion for continuance based on a claim of inadequate preparation time, we consider:  (1) "the time available for preparation"; (2) "the accused's role in shortening the effective preparation time"; (3) "the degree of complexity of the case"; (4) "the availability of discovery from the prosecution"; and (5) "the likelihood of prejudice from denial."  United States v. Jeri, 869 F.3d 1247, 1257 (11th Cir. 2017) (quotation marks omitted); see also United States v. Garmany, 762 F.2d 929, 936 (11th Cir. 1985).

All five factors support the district court's denials of Hawthorne's motions for a continuance.  First, Hawthorne had 306 days — the amount of time between the day that the government made him aware of the DNA swab (October 21, 2015) and the trial date (August 22, 2016) — to have the DNA swab analyzed.  That is a lot of time.  Cf. Garmany, 762 F.2d at 936 (upholding the district court's denial of a motion for continuance where the defendant's counsel entered an appearance less than eight weeks before trial began).  Second, Hawthorne played a role in shortening his effective trial preparation time.  Since the government made him

aware of the DNA swab's existence on October 21, 2015, Hawthorne did not mention the swab, or any other discovery-related matter, until he filed a motion for continuance on August 11, 2016, nearly two weeks after the August 1, 2016 motions deadline the district court had set. And Hawthorne did not mention that he wanted to have the DNA swab independently analyzed until the morning of the trial.

Third, this is not a complex case. It's "straightforward, both factually and legally." Id. at 937. Factually it turns on whether Hawthorne complied with one legal command: do not possess a firearm or ammunition. And the government presented a slew of evidence — testimony of three eyewitnesses, the tape of a 911 call, and the testimony of a police officer — all showing that Hawthorne did possess a firearm and ammunition. Fourth, the government turned over to Hawthorne the report that said DNA swabs of the pistol had been taken, which he acknowledged at trial.

The fifth factor — "the likelihood of prejudice from denial" — also cuts against Hawthorne. Jeri, 869 F.3d at 1257. Hawthorne "offered nothing more than speculation that the DNA test result would [have] be[en] beneficial to him," as the district court put it. And when he put forth an eleventh-hour theory just before trial that the pistol "was planted by one of the accusers," Hawthorne conceded that "if [his] DNA is on that firearm, [he] would have a serious issue at trial." The district

court did not abuse its discretion in denying Hawthorne's motions for a continuance.

B.

Hawthorne also contends that the district court abused its discretion in precluding him from calling an expert witness, Ricardo Gomez, to testify about the form and function of the firearms involved in the case, particularly the rifle, which was never recovered. He argues that, contrary to the district court's finding, he provided an adequate summary of Gomez's proposed testimony under Federal Rule of Criminal Procedure 16(b). We disagree. Hawthorne failed to comply with Rule 16(b)'s requirement that he "give to the government a written summary of [expert] testimony . . . describ[ing] [1] the witness's opinions, [2] the bases and reasons for those opinions, and [3] the witness's qualifications." Fed. R. Crim. P. 16(b)(1)(C).[3]

The notice that Hawthorne filed, which the district court described as a "brief perfunctory something," says that Gomez "is an expert on firearms and ammunition, particularly military and automatic weapons"; that "Gomez is the

---

[3] Rule 16(b)'s notice requirement applied to Hawthorne only if he requested from the government "a written summary of any [expert] testimony that the government intend[ed] to use . . . during its case-in-chief at trial." Fed. R. Crim. P. 16(b)(1)(C)(i). The record does not show whether Hawthorne made that request and thereby triggered the notice requirement. But we will follow the lead of the parties and the district court — all of whom addressed this issue and took it as a given that Hawthorne did.

former Chief of the Doral Police Department in Miami-Dade County, Florida"; and that Gomez "will testify about the characteristics of a weapon in question in this case, including its form, function, and tendencies." That's it. The notice fails to describe any opinion that Gomez held. And while it mentions Gomez's former job title, it does not "describe" how that position qualifies him to offer any opinions. Id. The district court did not abuse its discretion in precluding Gomez from testifying.[4]

## III.

Hawthorne's remaining challenges are directed at his 480-month sentence. He contends that the district court erred in finding that he was subject to an ACCA enhancement, and that his sentence is procedurally and substantively unreasonable. While we review de novo "whether a defendant's prior convictions qualify as

---

[4] We also reject Hawthorne's three other guilt stage challenges. First, the district court did not, as Hawthorne contends, abuse its discretion in "expressing its scorn" with his counsel in the presence of the jury. The record, when viewed in its entirety, does not show the "pervasive bias and unfairness" necessary for reversal on that ground. United States v. Hill, 643 F.3d 807, 846 (11th Cir. 2011) (quotation marks omitted). Second, the district court acted well within its range of choice by offering to let the jurors examine a firearm magazine and ammunition in open court instead of permitting them to do so in the jury room. See United States v. Zepeda-Santana, 569 F.2d 1386, 1391 (5th Cir. 1978). And third, the district court did not abuse its discretion under Federal Rules of Evidence 401 and 403 by admitting into evidence: (1) Seymour's testimony about Hawthorne firing a rifle; (2) testimony and photos about Johnson's injury; (3) the police officer's testimony about the chart he made that identified Hawthorne as "Moose"; and (4) Smith's and Johnson's testimony about Hawthorne's use of Xavier as a human shield. That evidence was relevant under Rule 401 because it tended to make it more probable that Hawthorne was in possession of the pistol, the ammunition for the pistol, or the ammunition for the rifle. See Fed. R. Evid. 401. And none of the evidence was so inflammatory that the "extraordinary remedy" of Rule 403 exclusion was appropriate. See United States v. Blake, 868 F.3d 960, 975 (11th Cir. 2017) (quotation marks omitted).

violent felonies under the ACCA," United States v. Hill, 799 F.3d 1318, 1321 (11th Cir. 2015), we review only for an abuse of discretion whether a sentence is procedurally or substantively unreasonable, United States v. White, 663 F.3d 1207, 1215 (11th Cir. 2011).

## A.

Hawthorne contends that there are two reasons why the ACCA enhancement does not apply to him. He argues that his prior conviction under Florida Statutes section 843.01 for resisting an officer with violence does not qualify as a "violent felony" under the ACCA. 18 U.S.C. § 924(e)(1). And he argues that his two prior convictions for intent to sell cocaine are too remote in time to count as "serious drug offense[s]" under the ACCA because they are both more than twenty years old. Id. The prior panel precedent rule forecloses both arguments. See United States v. Sneed, 600 F.3d 1326, 1332 (11th Cir. 2010) ("[A] prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting en banc.").

This Court has held that a conviction under section 843.01 for resisting an officer with violence qualifies as a "violent felony" for ACCA purposes. See Hill, 799 F.3d at 1322; United States v. Romo-Villalobos, 674 F.3d 1246, 1249, 1251 (11th Cir. 2012). And we have squarely addressed, and rejected, the argument that prior convictions for violent felonies or serious drug offenses can be "too remote in

11

time to serve as a predicate for enhancing [a] sentence pursuant to section 924(e)(1)." United States v. Green, 904 F.2d 654, 655 (11th Cir. 1990). Neither the Supreme Court nor this Court sitting en banc has overruled, or even undermined, those decisions. So we are bound to apply them.

## B.

Hawthorne also challenges the procedural and substantive reasonableness of his sentence. At the sentence hearing the government sought, and the district court imposed, a variance up from the guidelines range of 262 to 327 months to a sentence of 480 months in prison. After considering the parties' statements, the presentence investigation report, and the 18 U.S.C. § 3553(a) factors, the district court found that sentence sufficient but not greater than necessary.

When we review the reasonableness of a sentence, we first ensure that the district court did not commit a significant procedural error. United States v. Shaw, 560 F.3d 1230, 1237 (11th Cir. 2009) (quoting Gall v. United States, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007)). If we conclude that the sentence is procedurally reasonable, we then assess substantive reasonableness by looking at the totality of the circumstances, including whether the § 3553(a) factors support the sentence. United States v. Gonzalez, 550 F.3d 1319, 1323–24 (11th Cir. 2008). We will vacate a sentence as substantively unreasonable if, and only if, we have a "definite and firm conviction that the district court committed a clear error of judgment in

12

weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. Irey, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (quotation marks omitted).

Hawthorne maintains that his sentence is procedurally unreasonable because the district court allowed Smith to testify at the sentence hearing about what he describes as an "unsubstantial claim that [Xavier's] brief encounter with [Hawthorne] resulted in 'PTSD.'" But the district court gave no indication that it relied on Xavier's purported PTSD diagnosis to arrive at the sentence that it imposed. Hawthorne's sentence is procedurally reasonable.[5]

Hawthorne also contends that his sentence is substantively unreasonable because the district court improperly weighed the §3553(a) factors. We are not persuaded of that. The district court placed heavy emphasis on the need to reflect the seriousness of the offense, afford adequate deterrence, and protect the public from Hawthorne's further crimes. It did so because of Hawthorne's use of Xavier as a human shield while brandishing a pistol, his concealment of a rifle in his pants, and his firing of the rifle in the presence of at least five children. Whether

---

[5] Hawthorne also argues that Smith should not have been allowed to testify at the sentence hearing at all. Because he did not raise that argument before the district court, we review it for plain error only, and it fails. Hawthorne has not pointed to any statute, rule, or binding precedent from the Supreme Court or this Court to support his argument. See United States v. Lejarde-Rada, 319 F.3d 1288, 1291 (11th Cir. 2003) (explaining that an asserted error is not "plain" unless the issue is squarely resolved by "the explicit language of a statute or rule" or binding "precedent from the Supreme Court or this Court"). He has not shown that there was any error in allowing Smith to testify, much less plain error.

the district court should have attached more weight to one factor over another was "a matter committed to [its] sound discretion." United States v. Williams, 526 F.3d 1312, 1322 (11th Cir. 2008).

   **AFFIRMED.**