[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-14153
Non-Argument Calendar
_____

D.C. Docket No. 2:15-cr-14047-RLR-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANDREW CUNNINGHAM, III,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 25, 2017)

Before TJOFLAT, WILLIAM PRYOR, and MARTIN, Circuit Judges.

PER CURIAM:

Andrew Cunningham III appeals his conviction for possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). First, he argues the district court erred by giving the jury a modified Allen[1] charge. Next, Cunningham contends the district court erred by denying his motion to suppress. Last, he asserts the district court erred by denying his motion to subpoena a state court judge under Federal Rule of Criminal Procedure 17(b). After careful review, we affirm.

## I. BACKGROUND

On May 4, 2015, Martin County Sheriff's Office deputies received a report of a broken window and gunshots in Indiantown, Florida. The deputies were told that Cunningham had broken the window of a truck belonging to his cousin, Olajide Gaston. There were also reports that Cunningham had been walking around the neighborhood with a weapon wrapped in a shirt.

The next day, the Sheriff's Office received a call about a shooting victim who had arrived at a fire station in Indiantown seeking medical attention. The deputy who arrived at the fire station recognized Cunningham as the victim. Cunningham was taken to a hospital for treatment while deputies went to his mother's home where he lived. Cunningham's mother, Patricia Jackson, let the deputies into her home. The deputies spoke with Jackson, as well as

---

[1] Allen v. United States, 164 U.S. 492, 17 S. Ct. 154 (1896).

Cunningham's sister and several neighbors. Cunningham's sister told the deputies that Gaston shot Cunningham in the stomach then left in a red truck.

The deputies told Jackson they were investigating her son's shooting and asked for her consent to search the home for evidence related to that shooting as well as the complaints they had received the day before. One of the officers told Jackson they were looking for a firearm in her son's bedroom. Jackson said "okay" and told them where Cunningham's bedroom was located. She also signed a written consent form.

In Cunningham's bedroom, the deputies saw a jacket on the floor. One of the deputies picked up the jacket and felt it was "weighted." The deputy then felt a gun inside the jacket's pocket. After the deputy felt the gun, a detective told the deputy to stop searching so that the Sheriff's Office could get a search warrant before proceeding. Based on an affidavit from a detective in the Sheriff's Office, a Florida county judge issued a search warrant. After getting the warrant, the deputies returned to Jackson's house, showed Jackson the warrant, and found a firearm in the jacket.

Cunningham was then convicted by a jury of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The district court sentenced him to 120-months imprisonment. This appeal followed.

## II. **ALLEN** CHARGE

An Allen charge instructs a deadlocked jury to take further efforts and continue its deliberations to try to reach a verdict. United States v. Chigbo, 38 F.3d 543, 544 n.1 (11th Cir. 1994) (per curiam). Based on Allen, this circuit has adopted a modified Allen charge that is part of our pattern jury instructions. See Eleventh Cir. Pattern Jury Instrs. (Criminal Cases) T5. We have approved this charge "on numerous occasions." United States v. Bush, 727 F.3d 1308, 1320 (11th Cir. 2013) (per curiam) (quotation omitted). We review for an abuse of discretion the district court's decision to instruct the jury using a modified Allen charge. See United States v. Woodard, 531 F.3d 1352, 1364 (11th Cir. 2008).

The jury in Cunningham's trial began its deliberations on April 6, 2016 at 3:30 p.m. The next day, at 2:55 p.m., the jury sent a note to the district judge saying it was divided on a verdict. The jury's note gave the court its exact numerical split, despite written instructions not to do so.[2] The district court considered giving the jury a modified Allen charge at that time, but instead chose to instruct the jury to "continue your deliberations in an effort to reach a unanimous verdict, if you are able to do so." After further deliberations, the jury sent the district court another note the next morning saying it "hereby informs the judge that we cannot reach a unanimous verdict." Over Cunningham's objection,

---

[2] The exact split of the jury was placed, and remains, under seal by the district court. The note did not reveal how the votes were allocated in terms of guilty and not guilty votes.

4

the district court decided to give the jury this circuit's modified <u>Allen</u> instruction. The jury then reached a unanimous guilty verdict shortly thereafter.

On appeal, Cunningham challenges the use of this charge as coercive to the jury and therefore an abuse of discretion. An <u>Allen</u> charge can be coercive in two ways relevant to this appeal: (1) if it is given prematurely; or (2) if it is "inherently coercive, given the totality of the circumstances." <u>See</u> <u>Bush</u>, 727 F.3d at 1320. Cunningham concedes that under our binding precedent, the <u>Allen</u> charge in his case was not premature. <u>See</u> <u>id.</u> at 1320–21 (holding that an <u>Allen</u> charge given "only four hours after deliberations began" was not premature). He similarly raises arguments about the wisdom of the use of an <u>Allen</u> charge altogether that he concedes are foreclosed by our precedent. <u>See</u> <u>id.</u> at 1320 (noting that any challenge to "the language of the given <u>Allen</u> charge" as coercive "would be unavailing" under this circuit's law). Instead, Cunningham wishes only to preserve this argument for review by this Court sitting en banc or by the Supreme Court. We agree his arguments are foreclosed and note his objections. <u>See</u> <u>Horowitch v. Diamond Aircraft Indus., Inc.</u>, 645 F.3d 1254, 1258 (11th Cir. 2011) ("Under the prior panel precedent rule, we are bound by earlier panel holdings unless and until they are overruled en banc or by the Supreme Court." (quotation omitted and alteration adopted)).

Next, Cunningham challenges the Allen charge as inherently coercive because the district court gave it after learning the jury's numerical split. He says this "unduly influenced the minority jurors to join the majority." Cunningham points to caselaw from other circuits to support this argument. But under our precedent, "[t]he fact that the jury contrary to the instructions of the court volunteered to the court the extent of their division and which way they stood is no reason why the court should be precluded from giving an otherwise proper Allen charge." Sanders v. United States, 415 F.2d 621, 631–32 (5th Cir. 1969).[3] We therefore conclude the district court did not abuse its discretion.

### III.  MOTION TO SUPPRESS

The police found the firearm that Cunningham was charged with possessing in his bedroom at his mother's house. Cunningham filed a motion to suppress the firearm. After an evidentiary hearing, the district court found that: Jackson's oral and written consent to search her home was valid; there was probable cause to support the search warrant; and, in the alternative, even if the search warrant was not

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981. Id. at 1209.

valid, it was executed in good faith.[4]  Based on these findings, the motion to suppress was denied.

"A denial of a motion to suppress involves mixed questions of fact and law." United States v. Barber, 777 F.3d 1303, 1304 (11th Cir. 2015).  We review for clear error the district court's factual findings, viewing the evidence in the light most favorable to the prevailing party.  Id.  We review de novo the application of the law to the facts.  Id.

### A.

Cunningham first challenges whether Jackson's consent was voluntary.[5]  The Fourth Amendment generally prohibits officers from searching a person's home without a warrant.  Payton v. New York, 445 U.S. 573, 586, 100 S. Ct. 1371, 1380 (1980) ("[S]earches and seizures inside a home without a warrant are presumptively unreasonable.").  One exception to the warrant requirement arises where the officers get valid consent to search.  Illinois v. Rodriguez, 497 U.S. 177, 181, 110 S. Ct. 2793, 2797 (1990).  As Cunningham concedes, only Jackson's consent was needed to search the home because she owned it and had access to Cunningham's room.  See United States v. Brazel, 102 F.3d 1120, 1148 (11th Cir.

---

[4] The district court adopted the magistrate judge's Report and Recommendation in full and denied all of Cunningham's objections.  We therefore refer to the magistrate judge's findings as those of the district court.

[5] Cunningham asserts that he has standing to challenge the search of Jackson's home because he also lived there.  We agree.  See Bumper v. North Carolina, 391 U.S. 543, 548 n.11, 88 S. Ct. 1788, 1791 n.11 (1968) (holding where the defendant lived in a home someone else owned, "there can be no question of [his] standing to challenge the lawfulness of the search").

1997) ("A third party's consent to search an area is valid if [s]he has mutual use of it, with joint access to or control of the area for most purposes.").

Consent is voluntary "if it is the product of an essentially free and unconstrained choice." United States v. Purcell, 236 F.3d 1274, 1281 (11th Cir. 2001) (quotation omitted). We evaluate whether a consensual search was voluntary by examining the "totality of the circumstances" in each case. United States v. Yeary, 740 F.3d 569, 581 (11th Cir. 2014). In analyzing the totality of the circumstances, no one factor controls. Schneckloth v. Bustamonte, 412 U.S. 218, 226, 93 S. Ct. 2041, 2047. Instead this Court recognizes several important factors to consider, "including the presence of coercive police procedures, the extent of the defendant's cooperation with the officer, the defendant's awareness of his right to refuse consent, the defendant's education and intelligence, and the defendant's belief that no incriminating evidence will be found." Purcell, 236 F.3d at 1281. We also consider whether consent was "induced by deceit, trickery[,] or misrepresentation" of a government agent. United States v. Tweel, 550 F.2d 297, 299 (5th Cir. 1977). It is the government's burden to prove both that consent was given and that it was "given freely and voluntarily." Yeary, 740 F.3d at 581 (quotation omitted). Because Cunningham challenges the district court's factual

findings about voluntariness, we review these findings for clear error.[6]  Id.  That means "we will disturb the ruling only if we are left with the definite and firm conviction that the trial judge erred."  United States v. Fernandez, 58 F.3d 593, 596–97 (11th Cir. 1995) (per curiam) (quotation omitted).

Cunningham argues Jackson's consent was not voluntary because it was obtained through deceit.  He says the officers claimed they were looking for evidence related to his being the victim of a shooting, but were actually seeking evidence that he unlawfully possessed a firearm.  Our review of this record, however, supports the district court's finding.  As the court noted, the officers here testified that they told Jackson they were investigating both her son's shooting and the complaints from the previous day.  One officer testified that he told Jackson they were specifically "looking for a firearm in her son's bedroom."  And Jackson herself testified that she allowed the officers into her home and gave them her oral and written consent to search.  Indeed, she said she cooperated with the police because she wanted evidence out of her house.  On this record, we cannot say the district court clearly erred in finding that Jackson's consent was voluntary.  See Yeary, 740 F.3d at 581.

---

[6] In cases where the parties do not dispute the facts and both rely solely on the testimony of the government's witnesses, our review of voluntariness is de novo.  United States v. Valdez, 931 F.2d 1448, 1451–52 (11th Cir. 1991); United States v. Garcia, 890 F.2d 355, 359–60 (11th Cir. 1989).

9

B.

Cunningham also challenges the district court's finding that the search warrant was supported by probable cause.  He argues that the affidavit in support of the warrant contained information obtained from what he says was an unlawful consent search.  However, because we hold the district court did not clearly err in its finding that Jackson's consent was voluntary, Cunningham cannot prevail on this argument.  We therefore affirm the district court's denial of Cunningham's motion to suppress.

## IV.  RULE 17(b) MOTION

Last, Cunningham challenges the denial of his Rule 17(b) motion.  Rule 17(b) allows indigent defendants to subpoena witnesses whose presence is a "necessity" to an "adequate defense."  Fed. R. Crim. P. 17(b).  Cunningham's motion sought to subpoena the Florida county judge who signed the search warrant in this case.  Cunningham believed one of the deputies forged the judge's signature on the search warrant, and wanted to subpoena the judge to confirm the signature's authenticity.  The district court denied Cunningham's motion before trial, concluding the judge's testimony was "not necessary for an adequate defense."  Cunningham renewed his Rule 17(b) motion at trial, and the district court denied it again.

We review for an abuse of discretion the district court's decision to grant or deny a Rule 17(b) motion.  United States v. Rinschack, 820 F.2d 1557, 1566 (11th Cir. 1987); see also Taylor v. United States, 329 F.2d 384, 386 (5th Cir. 1964) (holding that we "will not disturb the exercise of that discretion unless exceptional circumstances compel it").  It is the defendant's burden to "articulat[e] specific facts that show the relevancy and necessity of the requested witness's testimony."  Rinschack, 820 F.2d at 1566.  Cunningham has not met this burden.  His motion was based purely on speculation that it was "possible" that the signature on the search warrant was forged.  As our precedent has noted, Rule 17(b) is "not a discovery device" and "the trial court is justified in preventing abuse of process" by denying a Rule 17 subpoena.  United States v. Hegwood, 562 F.2d 946, 952 (5th Cir. 1977).  The defendant must do more "than offer a feeling that a witness could shed some light on a possible" defense.  Id. at 953 (quotation omitted).  On this record, we conclude the district court did not abuse its discretion in denying Cunningham's Rule 17(b) motion.  See Rinschack, 820 F.2d at 1566.

**AFFIRMED.**